1  CRAIG G. MARGULIES, SBN 185925
   NOREEN A. MADOYAN, SBN 279227
2  **MARGULIES FAITH LLP**
   16030 Ventura Boulevard, Suite 470
3  Encino, CA 91436
   Telephone: (818) 705-2777
4  Facsimile: (818) 705-3777
   Email: Craig@MarguliesFaithLaw.com
5  Email: Noreen@MarguliesFaithLaw.com

6  Attorneys for Creditor,
   Glaser Weil Fink Howard Avchen & Shapiro LLP
7

8              **UNITED STATES BANKRUPTCY COURT**
                 **CENTRAL DISTRICT OF CALIFORNIA**
9                    **LOS ANGELES DIVISION**
10

11 In re                          | Case No.: 2:15-bk-15952-DS

12 FRED M. ADELMAN,               | Chapter: 11

13                    Debtor.

14                                 **NOTICE OF MOTION AND MOTION FOR
                                   SANCTIONS AGAINST DEBTOR FRED
15                                 MATTHEW ADELMAN AND HIS
                                   COUNSEL, CREIM MACIAS KOENIG &
                                   FREY LLP, PURSUANT TO FED. R.
16                                 BANKR. P. 9011 AND/OR 11 U.S.C. §
                                   105(a); DECLARATION IN SUPPORT
17

18                                 [Relates to Dkt nos. 432 and 455]

19                                 [See "Request For Judicial Notice," filed
                                   separately and concurrently hereto]
20
                                   Hearing:
21                                 Date:        September 21, 2016
                                   Time:        2:00 p.m.
22                                 Location:    U.S. Bankruptcy Court
                                                255 E. Temple St.
23                                              Courtroom 1339
                                                Los Angeles, CA 90012
24

25

26

27

28

**TABLE OF CONTENTS** **Page**

**MEMORANDUOM OF POINTS AND AUTHORITIES** ..............................**4**

**I.** **INTRODUCTION**...............................................................................**4**

**II.** **PROCEDURAL HISTORY** ..............................................................**6**

**III.** **ARGUMENT**.................................................................................**11**

  **A.** **Rule 9011 Sanctions Are Appropriate Under the Circumstances**...............**11**

    1. **The Emergency Motions Are Procedurally Improper, Devoid of Any Factual Basis and Only Seek to Delay** ......................................................**12**

    2. **The Emergency Motions' Litany of Baseless Accusations and Misrepresentations Make Clear that They Were Filed fo an Improper Purpose** .......................................................................................**15**

  **B.** **Sanctions Based on the Court's Initiative Are Appropriate**.........................**16**

  **C.** **Section 105(a) Civil Contempt Sanctions Should Be Awarded**...................**17**

**IV.** **CONCLUSION** .............................................................................**19**

1

2

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                                                          **Page**

3

4

Christopherson v. Needler (In re Grantham Bros.),
    922 F.2d 1438, 1441 (9th Cir. 1991) ........................................................................12

5

6

Eastway Construction Corp. v. City of New York,
    762 F.2d 243, 254 (2nd Cir. 1985) ...........................................................................15

7

Huettig & Schromm, Inc. v. Landscape Contractors Council of Northern
    Calif.,
    790 F.2d 1421, 1427 (9th Cir. 1986) ........................................................................12

8

9

In re Crayton,
    192 B.R. 970, 976, fn. 6 (9th Cir. BAP 1996) ...........................................................17

10

11

Islamic Shura Council of S. Cal v. F.B.I.,
    757 F.3d 870, 872 (9th Cir. 2014) .............................................................................16

12

Ivanova v. Columbia Pictures Indus., Inc.,
    217 F.R.D. 501, 514 (C.D. Cal. 2003) ......................................................................19

13

14

Leon v. IDX Systems Corp.,
    464 F.3d 951, 961 (9th Cir.2006) ..............................................................................17

15

Miller v. Cardinale (In re DeVille),
    361 F. 3d 539, 543 (9th Cir. 2004) ............................................................................11

16

17

Margo v. Weiss,
    213 F.3d 55, 64 (2nd Cir. 2000) ................................................................................15

18

Marsch v. Marsch (In re Marsch),
    36 F.3d 825, 829 (9th Cir. 1994) .........................................................................11, 19

19

20

Nisenbaum v. Milwaukee County,
    333 F.3d 804, 808 (7th Cir. 2003) .............................................................................13

21

Patison v. Dye (In re Dixie Farms Mkt.),
    28 F. App'x 673, 676 (9th Cir. 2002) .........................................................................19

22

23

Primus Auto. Fin. Servs., Inc. v. Batarse,
    115 F.3d 644, 649 (9th Cir. 1997) .............................................................................18

24

Sasson v. Sokoloff (In re Sasson),
    424 F.3d 864, 874 (9th Cir. 2005) .............................................................................17

25

26

Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,
    682 F.3d 170, 176-177 (2nd Cir. 2012) .....................................................................13

27

Townsend v. Holman Consulting Corp.,
    929 F.2d 1358, 1362 (9th Cir. 1990) .........................................................................11

28

<u>Zaldivar v. City of Los Angeles,</u>
   780 F.2d 823, 829, 833 (9th Cir. 1986) ....................................................... 15

**ARBITRATION REFERENCES**                                                    **Page**

Glaser Weil Fink Jacobs Howard Avchen & Shapiro LLP v. Kristen B.
   Whitney, an individual; the Watermill Flying Point Trust, by and through
   its Trustees F. Matthew Adelman and Kristen B. Whitney, (Reference
   No. 1220049793) ...................................................................................... 4

**<u>STATUES</u>**                                                            **Page**

11 U.S.C. § 105 ................................................................................................. 18

11 U.S.C. § 105(a) ......................................................................................... 2, 17

11 U.S.C. § 327 ................................................................................................. 14

**<u>RULES</u>**                                                              **Page**

Federal Rules of Bankruptcy Procedure 7001 ................................................. 13

Federal Rules of Bankruptcy Procedure 9011 ....................................... 2, 11, 15

Federal Rules of Bankruptcy Procedure 9011(b) ....................................... 12, 17

Federal Rules of Bankruptcy Procedure 9011(b)(1) ................................. 11, 12

Federal Rules of Bankruptcy Procedure 9011(b)(2) ....................................... 15

Federal Rules of Bankruptcy Procedure 9011(c)(1) ....................................... 12

Federal Rules of Bankruptcy Procedure 9011(c)(1)(B) .................................. 12

Federal Rules of Bankruptcy Procedure 9011(c)(2) ....................................... 19

Federal Rules of Civil Procedure 60(b) ............................................... 8, 12, 14

Local Bankruptcy Rules 2014-1 ...................................................................... 14

Local Bankruptcy Rules 7065-1(a) .................................................................. 13

Local Bankruptcy Rules 9011-3 ......................................................................... 2

Local Bankruptcy Rules 9013-1(f) ..................................................................... 2

1   **PLEASE TAKE NOTICE** that pursuant to Rule 9011 of the Federal Rules of

2   Bankruptcy Procedure (the "Rule 9011"), 11 U.S.C. § 105(a), and Rule 9011-3 of the Local

3   Bankruptcy Rules of the United States Bankruptcy Court for the Central District of

4   California (the "Local Bankruptcy Rules"), creditor Glaser Weil Fink Howard Avchen &

5   Shapiro LLP ("Glaser Weil" or "Movant"), in the bankruptcy case (Case No. 2:15-bk-15952-

6   DS, the "Bankruptcy Case") of the above-captioned debtor Fred Matthew Adelman (the

7   "Debtor"), hereby moves this Court for entry of an order of sanctions, jointly and severally,

8   against the Debtor and/or his counsel, Creim Macias Koenig & Fray LLP ("CMK&F"); and:

9   (i) awarding Movant it's reasonable attorneys' fees and expenses incurred in defending

10  against the emergency motions[1] (the "Emergency Motions") filed by the Debtor through

11  his counsel, CMK&F; and (ii) awarding Movant it's reasonable attorneys' fees and

12  expenses incurred in preparing and arguing this motion for sanctions (the "Motion").

13      **PLEASE TAKE FURTHER NOTICE** that the Motion has been served upon all

14  parties entitled thereto and is based upon the supporting Memorandum of Points and

15  Authorities, the Declaration of Craig G. Margulies, the arguments and representations of

16  counsel who will appear at the hearing on the Motion, the files and records in the above-

17  captioned case, the separately and concurrently filed Request for Judicial Notice, and any

18  evidence properly before the Court prior to or at the hearing regarding the Motion.  In

19  addition, Movant requests that the Court take judicial notice of all documents filed with the

20  Court in this Bankruptcy Case.

21      **PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-

22  1(f), responses to the Motion must be filed with the Court and served upon the Movant's

23  counsel at the address in the upper left-hand corner of this Motion no later than fourteen

24  (14) days prior to the hearing date. Responses must contain a written statement of all

25  _____

26  [1] The term "Emergency Motions" refers to the "Notice of Motion and Motion for (1) Issuance of a
    Temporary Restraining Order; (2) Relief from Order under FRCP 60(b)(1), (2), and (6) Made Applicable to
    Bankruptcy Proceedings Pursuant to FRBP 9024; and (3) Issuance of a Preliminary Injunction" (Dkt. No.

27  432, the "First Emergency Motion"); and the "Emergency Motion of Debtor and Debtor in Possession for
    Order Authorizing Expenditure of Estate Funds to Retain Counsel" (Dkt. No. 455, the "Second Emergency

28  Motion").

1   reasons the Motion is opposed and must include declarations and copies of all

2   documentary evidence on which the responding party intends to reply.  Responses must

3   be filed either electronically or at the following location: United States Bankruptcy Court

4   255 E. Temple Street, Los Angeles, CA 90012.

5      **PLEASE TAKE FURHTER NOTICE** that if a response is not timely filed and

6   served, the Movant's will request that the Court grant the relief requested in the Motion

7   without further notice or hearing.

8      **PLEASE TAKE FURTHER NOTICE** that if a response is timely field and served

9   upon the Movant's counsel, the Court, in its discretion, may treat the initial hearing as a

10  status conference if it determines that the Motion involves disputed factual issues or will

11  require presentation of substantial evidence or argument.

12     **WHEREFORE,** the Movants respectfully request that the Court enter an order

13  against the Debtor and/or CMK&F, jointly and severally: (i) granting the Motion; (ii)

14  awarding Movant its reasonable attorneys' fees and expenses incurred in defending the

15  Emergency Motions filed by CMK&F on behalf of the Debtor; (iii) awarding Movant its

16  reasonably attorneys' fees and expenses incurred in preparing and arguing this Motion;

17  and (iv) granting the Movant such other and further relief as may be appropriate under the

18  circumstances.

19

20  DATED:  August 31, 2016          **MARGULIES FAITH, LLP**

21                                   By: _____*/s/ Craig G. Margulies*_____
                                         Craig G. Margulies
22                                       Noreen A. Madoyan
                                         Counsel for Creditor, Glaser Weil
23                                       Fink Howard Avchen & Shapiro LLP

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The Emergency Motions were filed frivolously, as they are devoid of legal merit, littered with baseless accusations, lacking evidence, and are procedurally improper.  The Debtor and his counsel, CMK&F, should be sanctioned, jointly and severally, by this Bankruptcy Court for their filing of the frivolous Emergency Motions.

Glaser Weil spent almost five (5) years litigating with the "Watermill Flying Point Trust" (the "Trust") and the Debtor's non-filing spouse, Kristin Whitney ("Whitney")[2] (including against the Debtor as alleged co-Trustee of the Trust), in the matter entitled *Glaser Weil Fink Jacobs Howard Avchen & Shapiro LLP v. Kristen B. Whitney, an individual; the Watermill Flying Point Trust, by and through its Trustees F. Matthew Adelman and Kristen B. Whitney*, (Reference No. 1220049793) (the "Arbitration"). The Debtor is not a party to the Arbitration, but the alleged co-Trustee of the Trust.

The detailed procedural history of the Arbitration and the underlying, related state court actions are well documented before this Bankruptcy Court.  Additionally documented before this Bankruptcy Court is the Respondents' bad faith delay tactics throughout litigation.  (See Glaser Weil's two oppositions to the Emergency Motions, Glaser Weil's motion for relief from the automatic stay, and numerous other pleadings filed in this Bankruptcy Case by Glaser Weil) Glaser Weil believes this Court is well informed of the bad faith tactics taken by the Debtor and the Respondents, and therefore will not seek to belabor the long procedural history of delay tactics, but instead merely incorporate by reference the factual procedural history of the Arbitration, as further referenced below.

In regard to the Emergency Motions, when it became readily apparent to Respondents (and the Debtor) that their 5-years' worth of delay tactics were all used up, and the binding Arbitration was proceeding to trial, the Debtor and his bankruptcy counsel, CMK&F, resorted to filing the Emergency Motions in this Bankruptcy Case.  As this

---

[2] Together, Whitney and the Watermill Flying Point Trust shall be referred to herein as the "Respondents".

1   Bankruptcy Court and all interested parties are well aware, the filing of the Emergency

2   Motions were the last-ditch attempts to further delay the Arbitration from proceeding on

3   the merits, and in an effort to avoid the inevitable ruling being entered against the

4   Respondents.[3]

5        As explained in detail below, both Emergency Motions were procedurally defective

6   (so that no relief was even procedurally possible under the frivolous filings), articulated

7   "faux-emergencies," and were allegedly supported by the Debtor's declaration who

8   misrepresented to the Bankruptcy Court the procedural posture and history of the

9   Arbitration.  The Emergency Motions were brought forth with the clear intent to delay the

10  Arbitration from moving forward on the merits without any evidence or legal basis in

11  support of the relief requested.

12       The Court, at the hearing on the Second Emergency Motion, articulated that "**it is**

13  **becoming an insult to the Court to see these motions filed on an emergency basis**

14  **by the debtor**" (emphasis added); and further stated, "**I just want to again make it clear**

15  **to the debtor that I find these motions to be being most charitable on the verge of**

16  **frivolous motion and I hope I don't see another one**" (emphasis added).[4]

17       It is clear that the Debtor, through the filings by its counsel, CMK&F, simply wanted

18  to thwart the Arbitration from moving forward on the merits by any means necessary, after

19  years and years of the Respondents' bad faith delay tactics which efforts had dried up in

20  the Arbitration.  The frivolous filings and such behavior should not be condoned, and the

21  Movants were in fact harmed by such actions.

22  ///

23  ///

24  ///

25

26  _____

[3] In fact, the Arbitrator ultimately did rule in Glaser Weil's favor and against the Respondents on all issues.
A true and correct copy of the Arbitrator's ruling against the Respondents is attached hereto as **Exhibit 6**,

27  and it is incorporated herein by this reference.
[4] A true and correct copy of the transcript of the Second Emergency Motion is attached as **Exhibit 1,** and it

28  is incorporated herein by this reference. *See* Exhibit 1, p. 14:1-6, 21-24.

1    Movant therefore respectfully requests this Bankruptcy Court to issue sanctions

2    against the Debtor and his counsel, jointly and severally, in order to (1) prevent future

3    improper pleadings from being presented to the Court, and (2) compensate Glaser Weil

4    and its counsel for the attorneys' fees and costs incurred unnecessarily.

5                        **II.    PROCEDURAL HISTORY**

6            This Court is well-aware of the long-winded history of the Arbitration, as referenced

7    in the Movant's oppositions to the Emergency Motions, as well as the Motion for Relief

8    from Stay (the "MFRS", Dkt. No. 62), and the Motion for Clarification of the MFRS (the

9    "Clarification Motion", Dkt. No. 279).  As such, for purposes of brevity, the Movant requests

10   that the Court take judicial notice of the MFRS, the Clarification Motion, and the Movant's

11   oppositions to the Emergency Motions (Dkt. No. 62, 279, 441, 442, and 459).[5]  In addition,

12   Movant highlights the following facts.

13           Prior to filing the Emergency Motions, CMK&F attempted to prevent the arbitrator,

14   the Hon. Peter D. Lichtman (Ret.) (the "Arbitrator"), from moving forward with the

15   Arbitration by sending a letter to the Arbitrator on July 14, 2016, approximately 10 days

16   before the Arbitration trial was set to commence (the "CMK&F July 14 Letter").[6]  The

17   CMK&F July 14 Letter claimed that the Arbitration must be stayed due to certain alleged

18   and fabricated bankruptcy issues.  Despite this Bankruptcy Court's clear order grating

19   relief from the automatic stay for the Arbitration to proceed, CMK&F attempted to

20   essentially side-step this Court's prior orders granting relief from stay and strong-arm the

21   Arbitrator into fearing the ramifications of the bankruptcy rules and process.  The CMK&F

22   July 14 Letter asserted that the Debtor's case should prevent the Arbitration pending

23   against the non-debtor Respondents (the Watermill Trust and Whitney) from moving

24   forward. Specifically, the CMK&F July 14 Letter stated:

25   ///

26

27   _____
[5] See concurrently filed Request for Judicial Notice, and incorporated herein by this reference.
[6] A true and correct copy of the CMK&F July 14 Letter is attached hereto as **Exhibit 2**, and it is
28   incorporated herein by this reference.

- "[T]he arbitration cannot proceed against [the Debtor] for a myriad of reasons."

- "[T]here are misrepresentation(s) . . . regarding the matters readiness for Arbitration."

- Respondents and the Debtor have been unable to obtain counsel to represent them in this matter.

- "[B]ecause of the current posture of [Debtor's] bankruptcy case, there is no urgency or legitimate reason for the Arbitration proceeding at this time."

- "[A]n adjudication of the Glaser Weil's claim, and Mr. Adelman's defenses and counter claims, is premature at this time."

*See* Exhibit 2.

Glaser Weil prepared a written letter response in opposition to the bad faith stay request in the CMK&F July 14 Letter, but prior to its delivery, the following day on July 15, 2016, the Arbitrator issued an order denying the improper stay requests in the CMK&F July 14 Letter. [7]  Clearly, the Arbitrator saw right through the bad faith tactics.  As provided in the Arbitrator's Order Denying Continuance, the Arbitrator found that an extension or stay of the Arbitration was improper because he found, among other things, that CMK&F did not have standing to make such requests since it did not represent the Respondents, the request was "disingenuous, as there is a repeated pattern of requesting continuations due to lack of representation" and Glaser Weil had "already obtained a relief from the bankruptcy stay so that this matter may proceed."  *See* Exhibit 3. The Arbitrator denied the request for a continuance/stay of the Arbitration.

Following the Arbitrator's denial of the requests in the CMK&F July 14 Letter, CMK&F turned to the Bankruptcy Court in another attempt to derail the Arbitration.  On July 21, 2016, CMK&F filed a <u>procedurally improper</u> and <u>meritless motion</u> seeking a

---

[7] A true and correct copy of the "Order Denying Respondent's Request to Continue Arbitration Hearing Set for July 26-27, 2016" (the "Order Denying Continuance") is attached hereto as **Exhibit 3**, and incorporated herein by this reference.

1    preliminary injunction, temporary restraining order, and relief pursuant to Federal Rule of

2    Bankruptcy Procedure 60(b), in a bad faith attempt to prevent the Arbitration from going

3    to trial on the merits (the "First Emergency Motion", Dkt. No. 432).  CMK&F attempted to

4    set the First Emergency Motion for hearing on shortened notice, arguing that "after waiting

5    nearly a year to proceed, the Arbitration is set to proceed . . . at the worse [*sic*] possible

6    time." *See* Dkt. 438, p.3:1-2.

7        On July 22, 2016, Glaser Weil sent CMK&F a letter asserting, among other things,

8    that the First Emergency Motion was filed in bad faith, to cause unnecessary delay, and

9    requested that the First Emergency Motion be immediately withdrawn (the "July 22

10   Letter").[8]  Glaser Weil's counsel never received a response to the July 22 Letter.  Thus,

11   on July 24, 2016, Glaser Weil filed its' written opposition to the First Emergency Motion

12   (the "Opposition to First Emergency Motion, Dkt. No. 441).  The Opposition to First

13   Emergency Motion, including all exhibits thereto, is incorporated herein by this reference.

14       On July 26, 2016, the Court entered an order denying the Debtor's request for a

15   hearing on shortened time on the First Emergency Motion.  On July 28, 2016, the Court

16   entered a detailed order denying the First Emergency Motion (the "Order Denying First

17   Emergency Motion", Dkt. No. 451),[9] without ever setting the matter for hearing.  The Order

18   Denying First Emergency Motion found that the First Emergency Motion was procedurally

19   defective in seeking a temporary restraining order and/or preliminary injunction and found

20   that the Debtor had not presented any grounds for relief under Rule 60(b).  More

21   specifically, the Court found that:

22       (1) It had already considered many of the arguments presented in

23           the First Emergency Motion, and overruled them when it granted

24           the MFRS;

25   _____

26   [8] A true and correct copy of the July 22 Letter is attached as hereto as **Exhibit 4,** and incorporated herein
     by this reference. As explained in detail below, given the limited time available to respond of the First
     Emergency Motion, the Movant submits that service of the July 22 Letter is sufficiently compliant with Rule
27   9011(c)(1)(A).
     [9] A true and correct copy of the Order Denying First Emergency Motion is attached as **Exhibit 5**, and is
28   incorporated herein by this reference.

1    (2) The Debtor had ample time to seek the relief requested at some

2    previous time and he failed to do so;

3    (3) Any delays caused in the Arbitration are not extraordinary

4    circumstances, or newly discovered evidence and can also be

5    contributed to the Debtor; and

6    (4) The Debtor had provided no basis to grant relief.

7    *See* Exhibit 5, Order Denying First Emergency Motion, p. 3:18-21, p. 4:5-7, p.6:1-3; p.

8    6:21-23.

9    On July 26, 2016, the Arbitration trial proceeded on the merits.

10    Less than two business days after the Court entered the Order Denying First

11    Emergency Motion (Exhibit 5), on August 1, 2016, CMK&F filed a second emergency

12    motion seeking an order authorizing the Debtor to expend estate funds to retain counsel

13    in the Arbitration (the "Second Emergency Motion", Dkt. No. 455).    The Second

14    Emergency Motion requested that the matter be heard on an emergency, shortened-time

15    basis.  The Second Emergency Motion was equally defective, if not more so than the First

16    Emergency Motion.  It presented absolutely no legal basis for the relief requested.  The

17    Second Emergency Motion, attempted to bring the Debtor into the purview of the

18    Bankruptcy Court (even though he was not a party to the Arbitration), attempted to use

19    Estate funds on non-Estate business, without providing any authority for the requested

20    relief. *See* Opposition to Second Emergency Motion, Dkt 459, p. 8:24-26.  The Debtor also

21    attempted to circumvent the Federal Rules and Local Bankruptcy Rules governing

22    employment of professionals, by failing to provide any information regarding the proposed

23    employment of the purported estate professional. *Id.* at p.9:19-21.

24    However given the purported emergency basis of the motion, Glaser Weil and its

25    counsel were forced to immediately shift gears in preparation of the opposition to the

26    procedurally improper and meritless Second Emergency Motion.

27    ///

28

1     At approximately 2:30 p.m. on August 2, 2016, the Court informed Glaser Weil (by

2   and through its counsel) that the Court set a hearing on the Second Emergency Motion

3   for August 3, 2016 at 2:45 p.m.  On August 3, 2016, prior to the hearing, Glaser Weil filed

4   its opposition to the Second Emergency Motion.[10]

5     At the hearing on the Second Emergency Motion, the Court denied the motion and

6   made multiple admonishing statements regarding the Emergency Motions.  With respect

7   to the First Emergency Motion the Court asserted, among other things, that:

8         **"…that motion was denied without a hearing because I felt that**

9         **it was so devoid of evidence or authority that it didn't warrant**

10        **anyone wasting the time to come into court and present oral**

11        **argument."**

12  (See Exhibit 1, p.13:19-23) (Emphasis added).   The Court's conclusions as to the Second

13  Emergency Motion were the same.  Further, the Court stated:

14        **"…these motions filed on an emergency basis by the debtor**

15        **based on some . . . faux emergency . . . to get some form of relief**

16        **that has no cause, no evidence supporting it and no basis in the**

17        **Bankruptcy Court."**

18  (*Id.*, p. 14:3-6)(Emphasis added).

19  The Court concluded that:

20         **"…there's no basis for the relief requested" and asserted that**

21        **the Emergency Hearings are "becoming an insult to the Court**

22        **and to the parties involved."**

23  (*Id.*, p.14:1-2) (Emphasis added).

24  _____

25  [10] The Second Emergency Motion was filed on an emergency basis and the Court set the matter for
    hearing within hours of the filing of said motion, and the hearing was set for approximately 24 hours later.
26  It appeared to Glaser Weil that the Court found some merit to the Second Emergency Motion due to the
    setting of the hearing so quickly and setting it for a hearing approximately 24 hours later.  It only became
27  apparent to Glaser Weil's counsel at the Aug. 3rd hearing that the Court only set the hearing in order to
    admonish CMK&F and the Debtor for the filing of the two Emergency Motions that had no merit, no
28  supporting evidence, and were procedurally improper.

1    The Court even recognized the frivolous nature of both Emergency Motions, by

2    stating that:

3        **"I find these motions to be being most charitable on the verge**

4        **of frivolous motion(s). . ."**

5    (*Id.*, p. 14:22-24) (Emphasis added). Rather than asserting any cognizable legal basis,

6    CMK&F relied on worn-out allegations previously alleged in prior pleadings and clearly

7    filed both Emergency Motions (likely at the Debtor's direction) in an attempt to delay the

8    inevitable ruling in the Arbitration against the Respondents.[11]

9        Based upon the foregoing, and the legal authority below, the Movant files the

10   present Motion for sanctions against the Debtor and CMK&F, jointly and severally, seeking

11   an order from this Bankruptcy Court to recover the legal fees and costs incurred

12   unnecessarily in responding to the Debtor's Emergency Motions, filed by CMK&F, and

13   attendant in all respects to this motion for sanctions.

14                        **III.    ARGUMENT**

15        A. **Rule 9011 Sanctions are Appropriate Under the Circumstances**

16        Rule 9011 imposes on attorneys "the obligation to insure that all submissions of a

17   bankruptcy court are truthful and for proper litigation purposes." *Miller v. Cardinale ((In re*

18   *DeVille)*, 361 F.3d 539, 543 (9th Cir. 2004).  Specifically, under Rule 9011(b)(1),

19   attorneys certify that their filings are: (i) not frivolous—*i.e.*, "that it is well-grounded in fact

20   and is warranted by existing law"; and (ii) "not interposed for any improper purpose, such

21   as to harass or to cause unnecessary delay or needless increase in the cost of litigation."

22   *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 829 (9th Cir. 1994) (internal quotations

23   omitted).  Although the "improper purpose" and "frivolous" inquiries are separate and

24   distinct, they often *overlap* … because "frivolousness" is evidence of an improper

25   purpose. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990).

26   Where experienced lawyers assert meritless claims, "a strong inference arises that their

27

28   [11] See **Exhibit 6**; see also FN 3, *supra.*

1    bringing of an action … was for an improper purpose." *Huettig & Schromm, Inc. v.*

2    *Landscape Contractors Council of Northern Calif.*, 790 F.2d 1421, 1427 (9th Cir. 1986).

3    Rule 9011(c)(1) states that "[t]he motion for sanctions may not be filed with or

4    presented to the court unless, within 21 days after service of the motion, the challenged

5    paper, claim, . . . is not withdrawn or appropriately corrected . . ."  In the alternative, the

6    Court may on its own initiative enter an order describing the specific conduct that

7    appears to violate Rule 9011(b), and direct the attorney to show cause. *See* FRBP

8    9011(c)(1)(B).

9    The Emergency Motions fall woefully short of meeting either requirement under

10   Rule 9011(b)(1).  *See Christopherson v. Needler (In re Grantham Bros.)*, 922 F.2d 1438,

11   1441 (9th Cir. 1991) ("Rule 11 is to be applied vigorously to curb widely acknowledged

12   abuse from the filing of frivolous pleadings.") (internal quotations omitted).

13   **1.  The Emergency Motions Are Procedurally Improper, Devoid of Any**

14   **Factual Basis and Only Seek to Delay**

15   On June 21, 2016, the Debtor, by and through counsel, filed the First Emergency

16   Motion requesting that the Court issue a temporary restraining order, relief pursuant to

17   Federal Rule of Bankruptcy Procedure 60(b) and a preliminary injunction.  The Debtor

18   also sought to set the matter for hearing on shortened time.  The First Emergency

19   Motion came on the heels of the Arbitrator's denial of the highly improper request for an

20   extension of the Arbitration as requested in the letter authored and delivered by the

21   Debtor's counsel in the CMK&F July 14 Letter.  *See* Exhibits 2 and 3 hereto.

22   The frivolous nature of the requests and underlying alleged facts (which were in

23   fact false) made by the Debtor and its counsel in the CMK&F July 14 Letter to the

24   Arbitrator were readily apparent.  The Arbitrator pointed this out in his swift order denying

25   the request (issued less than 24 hours later).  See Exhibit 3.  This is important because it

26   evidences that both the Debtor and his counsel, CMK&F, were on notice (before they

27   filed the First Emergency Motion) that their claims for a stay were without merit.

28

1    Nonetheless, the Debtor and CMK&F with full knowledge proceeded to file the First

2    Emergency Motion anyway.

3        Upon receipt of the First Emergency Motion, Glaser Weil noticed the frivolous

4    nature of such, and on July 22, 2016 sent CMK&F the July 22 Letter requesting that the

5    First Emergency Motion be withdrawn.  *See* Exhibit 4.  The July 22 Letter additionally

6    asserted that in the event the First Emergency Motion was not withdrawn, Glaser Weil

7    will move for sanctions.  In light of the order shortening time and the limited time

8    available for preparation of a response to the First Emergency Motion, Glaser Weil did

9    not have sufficient time to prepare a motion for sanctions to be served with the July 22

10   Letter.  Nevertheless, Glaser Weil asserts that the July 22 Letter provided sufficient

11   notice to CMK&F regarding the severe deficiencies of the First Emergency Motion and

12   requested that it be withdrawn.[12]  CMK&F ignored the July 22 Letter and the Debtor

13   failed to withdraw the First Emergency Motion.

14       As the Court noted in the Order Denying First Emergency Motion, CMK&F's and

15   the Debtor's request that the Court issue a preliminary injunction and/or temporary

16   restraining order was wholly deficient.  CMK&F, a well-seasoned bankruptcy firm,

17   attempted to circumvent the bankruptcy rules by requesting relief through an emergency

18   motion, rather than an adversary proceeding as required under FRBP 7001 and Local

19   Bankruptcy Rule 7065-1(a).  There was no attempt whatsoever to follow the required

20   procedures for a temporary restraining order or preliminary injunction.  Rather, it became

21   clear that the First Emergency Motion was simply an attempt by the Debtor to use the

22   Bankruptcy Court as a forum to further delay the Arbitration from proceeding to trial on

23   the merits despite the existing order granting relief form stay so the Arbitration could

24   proceed to trial.

25

26   [12] Some cases hold a warning letter, rather than a copy of the Rule 11 motion itself, may constitute
     "substantial compliance" with the "safe harbor" requirement. *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee*
27   *Soy & Sauce Factory, Ltd.*  682 F.3d 170, 176-177 (2nd Cir. 2012)—letter and notice of motion (without
     supporting papers) complies with spirit of Rule 11; *Nisenbaum v. Milwaukee County* 333 F.3d 804, 808
28   (7th Cir. 2003) —letter "complied substantially".

1        Next, CMK&F (presumably at the direction of the Debtor) essentially threw the

2  "kitchen sink" at the Court with respect to the relief requested under Rule 60(b). CMK&F

3  alleged any argument it could remotely craft and argued that it should fall under one of

4  the prongs for relief.  As the Court noted in the Order Denying the First Emergency

5  Motion, the Debtor: (1) raised many of the same points in prior motions, including his

6  opposition to the MFRS; (2) the evidence suggests that the Debtor may have brought

7  the First Emergency Motion in a further attempt to delay the Arbitration; and (3) the

8  Debtor had ample opportunity to seek relief prior to the First Emergency Motion and

9  failed to do so.  The claims asserted by the Debtor and CMK&F were not based on any

10  existing law and were frivolous, as provided by the Court at the hearing on the Second

11  Emergency Motion. The Court stated that "these motions filed on an emergency basis by

12  the debtor . . . [have] no cause, no evidence supporting it and no basis in the Bankruptcy

13  Court."  *See* Exhibit 1, p.14:3-6.  Even the Court has determined that these "so called"

14  Emergency Motions were meritless pleadings asserting claims that were not based on

15  applicable law.  *See* Exhibit 1, p.14:12-13.  CMK&F should not be able to one year after

16  the Court entered the order granting Glaser Weil's MFRS, seek to vacate that order in

17  the guise of the First Emergency Motion.

18        Moreover, as if to add insult to injury, CMK&F (again, likely based on the Debtor's

19  direction) went ahead and filed the Second Emergency Motion about two days after the

20  Order Denying the First Emergency Motion was entered.  More specifically, the Second

21  Emergency Motion presented not a single legal basis for the relief requested and to the

22  extent the relief requested was even proper, it failed to comply with Bankruptcy Code

23  section 327 or Local Bankruptcy Rule 2014-1 which sections govern employment of

24  estate professionals.  Like the First Emergency Motion, the Second Emergency Motion

25  was meritless and not grounded in any fact or existing law.  As noted by the Court, there

26  was "absolutely no case law that was submitted in support of the motion and the case

27  law that the Court was able to find . . . is very clear that there has to be justification for

28

1  use of estate funds." *See* Exhibit 1, p.14:12-16.  The Second Emergency Motion did not

2  even list the name of the professional sought to be employed.  CMK&F's motion was

3  procedurally improper and based upon no valid legal principle.  Such pleadings have no

4  place in the Bankruptcy Court and were clearly frivolous and failed attempts to delay the

5  inevitable final ruling in the Arbitration.

6     **2.  The Emergency Motions' Litany of Baseless Accusations and**

7        **Misrepresentations Make Clear that They Were Filed for an Improper**

8        **Purpose**

9       Rule 9011 is violated where the claim is not warranted by existing or law or a

10  "nonfrivolous argument."  Such violation is shown where it is "patently clear that a claim

11  has *absolutely no chance of success* under the existing precedents, and … *no*

12  *reasonable argument* can be advanced to extend, modify or reverse the law as it stands

13  …" *Eastway Construction Corp. v. City of New York* 762 F.2d 243, 254 (2nd Cir. 1985)

14  (Emphasis added). Or, stated differently, the standard is violated if *no* "plausible, good

15  faith argument can be made by a competent attorney to the contrary." Rule 9011(b)(2)

16  establishes an objective standard that is designed to eliminate any "empty-head pure-

17  heart" justification for patently frivolous arguments.  *Zaldivar v. City of Los Angeles* 780

18  F.2d 823, 829, 833 (9th Cir. 1986); *Margo v. Weiss* 213 F.3d 55, 64 (2nd Cir. 2000).

19       CMK&F's (and the Debtor's) improper motive in bringing the Emergency Motions

20  is laid bare by the baseless accusations, lack of legal authority and evidence, and factual

21  misrepresentations.  As this Court is well aware, the Debtor continuously presents false

22  claims and assertions (without evidence) which fail to accurately account the procedural

23  posture and history of the Arbitration.  The Declaration of David Myers in support of the

24  two oppositions to the Emergency Motions, respectively, articulate the factual history of

25  the Arbitration, in an undistorted and pure factual manner that relays the filings and

26  rulings.  *See* Request for Judicial Notice filed separately and concurrently hereto.

27  ///

28

1    Respondents and the Debtor were aware of the Arbitration "trial" dates for

2    approximately more than one year and had ample time to file whatever motions they

3    deemed necessary to move forward with the relief requested.  Rather than doing such,

4    CMK&F filed two emergency motions at essentially the last possible moment, in an

5    attempt to delay the Arbitration from moving forward and then seeking to prevent the

6    Arbitrator from issuing a ruling from the Arbitration.

7    While the Emergency Motions' alleged account of the facts that led to the

8    Arbitration were fabricated to support the requests in the Emergency Motions, CMK&F

9    and the Debtor know full well that their accounts are inaccurate and misleading.

10   Regardless, Rule 9011 required CMK&F to conduct a "reasonable inquiry" to ensure the

11   requests and accusations were well-grounded in fact – a standard that CMK&F failed to

12   satisfy.  *See Islamic Shura Council of S. Cal v. F.B.I.*, 757 F.3d 870, 872 (9th Cir.

13   2014)("Rule 11 is intended to deter baseless filings in district court and imposes a duty of

14   'reasonable inquiry' so that anything filing with the court is well grounded in fact, legally

15   tenable, and not interposed for any improper purpose.") (internal quotation and citation

16   omitted).

17    The Debtor's bad faith, delay tactics should not be condoned and are

18   sanctionable.  CMK&F's and the Debtor's actions continued to be an excessive waste of

19   judicial resources, not to mention the hundreds of thousands of dollars Glaser Weil

20   incurred to oppose the Debtor's and Respondents' bad faith delay tactics over the last

21   five (5) years in litigating a mere collection claim.  Glaser Weil respectfully requests this

22   Bankruptcy Court to issue sanctions against CMK&F and the Debtor, jointly and

23   severally, to allow Glaser Weil to recover its unnecessarily incurred legal fees and costs.

24    **B.  <u>Sanctions Based on the Court's Initiative are Appropriate</u>**

25    While Movant submits that it provided sufficient notice and a reasonable

26   opportunity for CMK&F to respond and withdraw the Emergency Motions, if the Court

27   finds that notice was insufficient, Glaser Weil requests that the Court, on its own

28

1    initiative, enter an order finding a violation of Rule 9011(b).  Pursuant to Rule 9011

2    (c)(1)(B), the Court, on its own initiative "may enter an order describing the specific

3    conduct that appears to violate subdivision (b) and directing an attorney, law firm, or

4    party to show cause why it has not violated subdivision (b)."  Glaser Weil submits that

5    based on the pleadings presented to the Court as described *supra* in section II.A., and

6    based on the Court's own statements at the hearing on the Second Emergency Motion,

7    CMK&F and the Debtor should be directed to show cause why they have not violated

8    Rule 9011(b).  CMK&F and the Debtor filed the Emergency Motions to needlessly

9    increase the cost of litigation and further presented claims and arguments that were

10   wholly unsupported by any legal basis.  As such, sanctions are appropriate and the

11   Court should order CMK&F and the Debtor to show cause why Rule 9011(b) has not

12   been violated.

13            **C.  Section 105(a) Civil Contempt Sanctions Should be Awarded**

14            To the extent that Rule 9011 does not specifically provide for the relief requested

15   by the Movant herein, the Court may order such relief under section 105, which

16   authorizes the Court to "issue any order, process, or judgment that is necessary or

17   appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a); see also *Sasson*

18   *v. Sokoloff (In re Sasson),* 424 F.3d 864, 874 (9th Cir. 2005) ("[T]he bankruptcy court

19   may use its inherent equitable power to fashion relief, as long as the remedy is

20   consistent with the objectives of the Bankruptcy Code.").

21            Subject to due process, the Bankruptcy Court's inherent sanctions power under §

22   105 includes the authority to discipline attorneys and parties appearing before it. *In re*

23   *Crayton* 192 B.R. 970, 976, fn. 6 (9th Cir. BAP 1996).  In order to award sanctions

24   against an attorney under this power, a court must "make an express finding that the

25   sanctioned party's behavior 'constituted or was tantamount to bad faith.'" *Leon v. IDX*

26   *Systems Corp.,* 464 F.3d 951, 961 (9th Cir.2006) (citation omitted). The Ninth Circuit has

27   held that:

28

1
2
3

> A finding of bad faith is warranted where an attorney 'knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.' . . . A party also demonstrates bad faith by 'delaying or disrupting the litigation or hampering enforcement of a court order.'

4
5

*Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997) (citations omitted).

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

Here, Glaser Weil asserts that the Court may afford relief in the form of monetary sanctions against the Debtor and CMK&F due to the bad faith nature of the Emergency Motions. As discussed above, both motions were wholly unnecessary and completely frivolous. The Emergency Motions were filed with advance notice of their frivolous nature, yet they proceeded anyway. CMK&F failed to comply with the procedural requirements as afforded by the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, and the Local Bankruptcy Rules. The pleadings provided no legal basis, and were essentially deemed frivolous by this Court and other interested parties. The July 14 Letter and the Emergency Motions were presented in an effort to hinder the effectiveness of the MFRS order, and in an attempt to prevent the Arbitration from proceeding to trial on the merits. The Court had already entered the MFRS order approximately one year before the Emergency Motions were filed which authorized the Arbitration from proceeding to trial. Based upon the foregoing, Glaser Weil submits the Emergency Motions were filed in bad faith and were frivolous. They presented no meritorious argument, were procedurally improper, lacked all evidence, and were clearly filed in a mere attempt to cause delay and disruption to the Arbitration/

23
24
25
26
27

As such, in the event the Court finds that sanctions under Rule 9011 and/or 11 U.S.C. § 105 are appropriate, Glaser Weil requests that the Court issue monetary sanctions against CMK&F and the Debtor, jointly and severally, for all reasonable attorneys' fees and costs incurred by Glaser Weil and its counsel in addressing all matters attendant to the Emergency Motions and this motion for sanctions.

///

28

## III.

## CONCLUSION

Based on the foregoing reasons, Glaser Weil respectfully requests that the Court grant the motion for sanctions and:

(i)    Award Glaser Weil their reasonable attorneys' fees and expenses incurred in defending against CMK&F and the Debtor's frivolous Emergency Motions;

(ii)    Award Glaser Weil their reasonable attorneys' fees and expenses incurred in preparing and arguing this motion for sanctions;[13]

(iii)    Grant any other and further relief as the Court deems just and proper.[14]

DATED:  August 31, 2016                **MARGULIES FAITH, LLP**

By: ____ */s/ Craig G. Margulies*_____
Craig G. Margulies
Noreen A. Madoyan
Counsel for Creditor, Glaser Weil
Fink Howard Avchen & Shapiro LLP

---

[13] To the extent the Court grants this motion, Glaser Weil respectfully requests the opportunity to submit declarations detailing the attorneys' fees and expenses incurred in responding to the Emergency Motions, briefing this motion and any reply, and preparing for and attending any oral argument related to the foregoing. *See Ivanova v. Columbia Pictures Indus., Inc.*, 217 F.R.D. 501, 514 (C.D. Cal. 2003) (granting Rule 11 motion and requesting post-hearing briefing regarding amount of attorneys' fees and expenses incurred by the movant).

[14] Under Rule 9011(c)(2), sanctions may include "directives of a non-monetary nature," as well as payment "to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Fed. R.. Bankr. P. 9011(c)(2); *see also Marsch*, 36 F.3d at 831 (upholding sanctions award representing amount of attorney's fees and costs incurred in fighting frivolous filing); *Patison v. Dye (In re Dixie Farms Mkt.)*, 28 F. App'x 673, 676 (9th Cir. 2002) ("It was also reasonable to include within the sanction the fees for time spending preparing and arguing the motion for sanctions because they were incurred as a result of the frivolous motion for reconsideration.").

# EXHIBIT 1

1                   UNITED STATES BANKRUPTCY COURT

2            CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES

3                           --oOo--

4  In Re:                    )
                             )   Case No.  2:15-bk-15952-DS
5                            )
   FRED MATTHEW ADELMAN,     )   Chapter 11
6                            )
                  Debtor.    )   Los Angeles, California
7  ----------------------------X   Wednesday, August 3, 2016
                                 2:45 P.M.
8
                                 HEARING RE: EMERGENCY MOTION
9                                OF DEBTOR AND DEBTOR IN
                                 POSSESSION FOR ORDER
10                               AUTHORIZING EXPENDITURE OF
                                 ESTATE FUNDS TO RETAIN
11                               [455]

12              TRANSCRIPT OF TELEPHONIC PROCEEDINGS
                BEFORE THE HONORABLE DEBORAH SALTZMAN
13                 UNITED STATES BANKRUPTCY JUDGE

14  APPEARANCES:

15  For the Debtor:          STUART K. KOENIG, ESQ.
                             633 West 5th Street
16                           48th Floor
                             Los Angeles, California  90071
17
    For Glaser Weil Fink     CRAIG G. MARGULIES, ESQ.
18  Jacobs Howard Avechen &  Margulies Faith, LLP
    Shapiro, LLP:            16030 Ventura Boulevard
19                           Suite #470
                             Encino, California  91436
20
    For Navigators Specialty STEPHEN F. BIEGENZAHN, ESQ.
21  Insurance:               Law Office of Stephen Biegenzahn
                             616 St. Paul Avenue
22                           Los Angeles, California  90017

23

24
    Proceedings produced by electronic sound recording;
25  transcript produced by transcription service.

P 888.272.0022  F 818.343.7119      BEN HYATT      www.benhyatt.com
                                    Certified Deposition Reporters

EXHIBIT 1          Page 20 of 65

```
 1   For the U.S. Trustee:      KENNETH G. LAU, ESQ.
                                Office of the U. S. Trustee
 2                              915 Wilshire Boulevard
                                Suite #1850
 3                              Los Angeles, California  90017

 4   Court Recorder:            Dawnette Francis
                                U.S. Bankruptcy Court
 5                              Central District of California
                                Edward R. Roybal Federal Building
 6                                 and Courthouse
                                255 East Temple Street, Room #1639
 7                              Los Angeles, California  90012
                                (855) 460-9641
 8
     Court Transcriptionist:    Ruth Ann Hager, C.E.T.**D-641
 9                              Ben Hyatt Certified Deposition
                                   Reporters
10                              17835 Ventura Boulevard
                                Suite #310
11                              Encino, California  91316

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

P 888.272.0022  F 818.343.7119        www.benhyatt.com

EXHIBIT 1              Page 21 of 65

Page                                                              3

1          LOS ANGELES, CALIFORNIA, WEDNESDAY, AUGUST 3, 2016

2                            2:46 P.M.

3                            --oOo--

4          THE CLERK:  Please come to order.  This court is

5    now in session, the Honorable Deborah J. Saltzman

6    presiding.

7          THE COURT:  All right.  Good afternoon.  This is

8    our hearing on the emergency motion filed by the debtor

9    Fred Adelman.  We have telephonic appearances today by

10   everyone involved, so why don't we start with appearances

11   and we'll go from there.

12         MR. KOENIG:  Good afternoon, Your Honor.  Stuart

13   Koenig, Creim Macias Koenig & Frey, on behalf of the

14   debtor, Fred Adelman.

15         THE COURT:  Good afternoon.

16         MR. MARGULIES:  Good afternoon, Your Honor.

17   Craig Margulies of Margulies Faith LLP on behalf of

18   creditor Glaser Weil.

19         THE COURT:  Good afternoon.

20         MR. BIEGENZAHN:  Good afternoon, Your Honor.

21   Steve Biegenzahn, Friedman Law Group, counsel for

22   Navigators Specialty Insurance.

23         THE COURT:  Good afternoon.

24         MR. LAU:  And in the courtroom, Your Honor,

25   Kenneth Lau on behalf of the U.S. Trustee.



Page                                                                    4

1          THE COURT:  Okay.  Good afternoon.  Mr. Lau, I

2    know this was an emergency motion and I've seen pleadings

3    coming in up until quite recently.  I don't know if the

4    U.S. Trustee filed anything but I haven't seen it.

5          MR. LAU:  We have not, Your Honor.

6          THE COURT:  Okay.  Thank you.  All right.  Well,

7    I have reviewed the motion and declaration, as well as the

8    two oppositions that were filed.  So I believe I'm up to

9    date on all of the papers that have been filed, including

10   the various exhibits and declarations.  I don't think we

11   need to spend too long going over the issues here on the

12   phone, but I want to make sure everyone has an opportunity

13   to highlight anything that they'd like.

14         Mr. Koenig, since this is the debtor's motion,

15   why don't you go ahead and highlight you think is important

16   for me to know about.

17         MR. KOENIG:  Well, thank you, Your Honor.  And

18   thank you for allowing us to have this appearance today.

19   I'll be as brief as possible.  The one thing that strikes

20   me about the opposition that was filed is that they make a

21   big point about the fact that Mr. Adelman is not a party to

22   the arbitration and, therefore, the estate should not be

23   allowed to expend these funds and I'm a little perplexed by

24   that position.

25         If the debtor is not a party to the arbitration,



**EXHIBIT 1**                                    **Page 23 of 65**

Page                                                                          5

1  then I don't quite understand why it was necessary for

2  Glaser Weil to obtain relief from stay to go forward with

3  the arbitration.  We -- it's our position that the

4  arbitration whether or not Mr. Adelman in his individual

5  capacity is a party, there are assets of the estate that

6  are at issue in the arbitration, primarily the trust.  The

7  trust has significant assets which both the Saltair

8  property and the Cheviotte (phonetic) property, which the

9  debtor intends to use towards his reorganization plan.

10        The other piece of real property, the Mendenhall

11  property is community property and is -- I'm sorry, is a

12  separate asset, part of it by the debtor's wife,

13  Ms. Whitney, which she is going to contribute as -- towards

14  new value for the plan.

15        So even if the debtor is not considered a party

16  to the arbitration, assets of the estate are at issue here

17  which need to be protected.  And there seems to be some

18  dispute over what was or wasn't raised at the arbitration,

19  which causes the debtor to go forward and seek counsel.  I

20  was not at the arbitration.  I don't believe Mr. Margulies

21  or Mr. Biegenzahn were there either.  So all I can do is

22  relay what I was told and that is that the parties,

23  specifically the debtor, and Ms. Whitney and the trust were

24  invited, maybe the proper term, to submit supplemental

25  brief on the issue of damages.  And specifically, interest



P 888.272.0022  F 818.343.7119     www.benhyatt.com
BENHYATT
Certified Deposition Reporters

**EXHIBIT 1**                    **Page 24 of 65**

Page                                                                    6

1    calculations which I'm told were first presented at the

2    arbitration and the exceed -- they're somewhere between two

3    and $300,000 and then there was an issue about whether or

4    not attorney's fees in general are even recoverable by

5    Glaser Weil.

6              There are specific -- there are issues that are

7    specific to the types of claims that are being raised that

8    are well beyond Mr. Adelman's area of expertise, even

9    though he has been representing the trust and arguing

10   perhaps on behalf of his wife.  I don't know.  And does

11   require the representation of counsel who specializes in

12   this area.  And in order to protect and preserve assets of

13   the estate he is seeking the authority of this court to use

14   $25,000 to retain counsel for that very purpose.

15             THE COURT:  Okay.  Thank you.

16             MR. MEYERS:  Your Honor, my name is David Meyers

17   (phonetic).  I was at -- apparently I'm the only one who's

18   here who was actually at the arbitration.  I'm happy to

19   answer any questions the Court might have.

20             THE COURT:  Okay.  Thank you, Mr. Meyers, and I

21   did see your declaration.  Typically we let counsel handle

22   the arguments and then if there are any questions for

23   witnesses, we'll deal with it then.

24             Mr. Margulies, anything you'd like to add?

25             MR. MARGULIES:  Yes, Your Honor.  I'm happy to



**EXHIBIT 1                    Page 25 of 65**

Page                                                                7

1   address any issues that Your Honor has with respect to our

2   opposition or we can incorporate it as well the opposition

3   that we filed to their emergency motion that they filed

4   just a week ago.  That was, Your Honor, as you likely

5   recall, overruled.

6              THE COURT:  Yes.

7              MR. MARGULIES:  First, I'll respond to

8   Mr. Koenig's response as to why we needed a relief from

9   stay at all.  Well, we did that in an abundance of caution

10  because this debtor, we knew, would argue that there were

11  issues in the arbitration that would affect this bankruptcy

12  estate.  That doesn't mean there's any admission that the

13  debtor is himself a party to that action.  We sought to

14  obtain the trust that Mr. Koenig discussed today who he

15  mentioned that it has three properties, Saltair, Cheviotte

16  and Mendenhall, and then mentioned that Mendenhall is a

17  separate property asset of the debtor's spouse, which is

18  perplexing to us because at the 341(a) they said the spouse

19  had no separate property assets, so we need to look into

20  that.

21             But it's -- the trust has never been submitted to

22  this court or any party, so no one really knows what that

23  trust has and what it says.  That's something that is not

24  before Your Honor.  It shouldn't even be considered.  What

25  should be considered is whether or not this is even an



EXHIBIT 1            Page 26 of 65

Page                                                              8

1  emergency.  This is being heard on two days' notice.  We've

2  been asked to basically do a three-ring circus over the

3  last ten days because the debtor is creating emergencies

4  that simply just don't exist.  This case has been pending

5  since 2011.  It's a simple collection matter for legal fees

6  and the debtor is doing anything he can to stop from being

7  determined on the merits.

8          The respondents are non-debtors.  That's -- it's

9  not disputed.  It's a trust.  The trust can't be a party in

10 a bankruptcy proceeding and secondly, you have the debtor's

11 non-filing spouse.  She is not a debtor either.  So estate

12 funds can't be used to be representing non-debtors.  They

13 didn't cite a single case for the proposition that this

14 bankruptcy estate should be authorized by Your Honor to

15 represent and to be using these funds to pay for non-

16 debtors.

17         They say, well, we have hundreds of thousands of

18 dollars in the estate.  Well, that's simply just going to

19 take out from what there will be available for distribution

20 to unsecured creditors.  They don't care about that,

21 obviously.  They didn't follow any procedures that are

22 required under Section 327 or 328 or Federal Rule of

23 Bankruptcy Procedure 2014 or Local Bankruptcy Rule

24 2014(1)(b).  They're simply here on a self-created

25 emergency that doesn't exist.



P 888.272.0022  F 818.343.7119                www.benhyatt.com

EXHIBIT 1          Page 27 of 65

Page                                                                                      9

1          And Adelman himself actually has expended funds

2    in the arbitration.  For example, they paid for a court

3    reporter to be there.  I don't know how much that was.  And

4    David -- Mr. Meyers who's on the line can attest to that.

5    They spent money on the arbitration and there's no

6    testimony that the non-debtors can't afford to pay for

7    their own representation.  In fact, Mr. Koenig just said

8    the debtor's spouse has her own property.  So I don't know

9    why we're all here at the eleventh hour after the

10   arbitration has already taken place when relief from stay

11   was granted over a year ago.  The arbitration has been

12   known about for about eight months and it's only been

13   delayed, as Your Honor stated in her order, due to the

14   debtor's action.

15          So this is just -- I'm surprised, Your Honor,

16   that we're even here.  And I think it's sanctionable.  I

17   said that in my prior opposition and will likely be filing

18   a motion for Your Honor -- before Your Honor on that

19   purpose.  This is just -- I think it's ridiculous and this

20   debtor should not be allowed to be creating these

21   emergencies, be abusing the system in the way that he does.

22          He's been a party to 100 actions, him and his

23   wife.  They are litigious.  They understand.  They're

24   vexatious litigants.  They understand the process.  They

25   use it to their benefit and they do these things that are



Page                                                                    10

1   not emergencies and it hurts everybody involved and they

2   just don't care.  They just don't care.  And I think it --

3   someone needs to slap them.  And, Your Honor, I'm sorry I'm

4   being so frank on this, but it's just not right.

5           And the papers and evidence that we submit

6   provide the true facts.  However, Mr. Adelman finds that he

7   can take the facts and twist them to however he feels

8   appropriate and make up facts.  For example, the

9   arbitration -- the brief that he's presented is on a single

10  issue.  Why is $25,000 even necessary for that?

11          And secondly, he says in his declaration that

12  evidence was presented at the last minute.  It's just a

13  pure fabrication, completely wrong.  And Mr. Meyers is on

14  the line and can testify to that.

15          So, Your Honor, we would ask that you deny this

16  motion.  There's simply no basis for an emergency.  It's

17  not procedurally proper and on the merits it's just

18  baseless.  Thank you.

19          THE COURT:  Mr. Biegenzahn, you filed an

20  opposition.

21          MR. BIEGENZAHN:  Your Honor, I don't have quite

22  the emotional stake in this that Mr. Margulies has.  I've

23  not been as close to the fray, if you will, with respect to

24  these proceedings.

25          The concern that Navigators has is all about the



Page                                                           11

1  bankruptcy process, the bankruptcy estate, and maximizing

2  the return to creditors.  It seems to me that Mr. Adelman

3  has really not embraced the notion that he's a fiduciary,

4  that this is about returning the maximum to creditors in

5  the shortest term possible so that the time value of money

6  doesn't make the recovery relatively meaningless.  If he

7  thought that the trust assets should be in the estate he

8  could have revoked the trust and brought them in, but he

9  didn't.

10        He's seeking to retain lawyers in a case that is

11  frankly not that large.  And if you were to compile a list

12  of lawyers who have been retained by the estate and then

13  let go by the estate or retained by Mr. Adelman and let go

14  by Mr. Adelman, it would be extensive.  And all of that

15  relates directly to inefficiency with respect to the return

16  to creditors.  I talked in our brief response to the

17  emergency motion about the distribution fraction and that

18  frankly is where his focus should be; it's where his

19  lawyers' focus should be.

20        It doesn't matter that much how large the

21  denominator grows and it does matter that the enumerator is

22  being reduced every time Mr. Frey or Mr. Koenig has to

23  draft a paper, even if some of the documentation is

24  ghostwritten.  It's expensive to have these fire sales of

25  activities relating to the analysis that is immaterial.



P 888.272.0022  F 818.343.7119      www.benhyatt.com
Certified Deposition Reporters

EXHIBIT 1                    Page 30 of 65

Page                                                          12

1  And as we've indicated in our papers and as Mr. Margulies

2  amplified, Mr. Biggs' testimony was, in essence, this claim

3  is not a big deal and maybe the fight isn't worth the

4  candle.  My words, not his.

5           In any event, we need to return our focus to the

6  Chapter 11 reorganization process and get it away from

7  third parties who are not participating in the bankruptcy

8  case, notwithstanding Mr. Koenig's assurance that they're

9  going to contribute assets.  And this request should be

10 rejected, as we indicate in our papers, out of hand.

11           THE COURT:  Okay.  Thank you.  Mr. Lau --

12           UNIDENTIFIED VOICE:  Your Honor, may I --

13           THE COURT:  One moment.  Mr. Lau, did you have

14 any comment?

15           MR. LAU:  I do, Your Honor.  You know, perhaps I

16 should defer, however, to counsel Meyers.  I'm perfectly

17 happy to speak now.

18           MR. MEYERS:  No, no, no.  Go right ahead.

19           MR. LAU:  Your Honor, on behalf of the U.S.

20 Trustee, you know, the concerns that we have, have been

21 elaborated with varying degrees of emotionality during the

22 oral arguments today.  And those are, you know, just to

23 reiterate, the motion fails to cite exactly why the debtor

24 should be expending funds to defend against an arbitration

25 where the debtor himself is not actually a party.  And with



Page                                                                              13

1    respect to -- to the extent that this is some kind of

2    shortcut employment application, it doesn't cite to any of

3    the underlying statutes, it doesn't identify any particular

4    counsel who is being hired, there frankly is not really any

5    "there" there in this motion.

6          And, Your Honor, I am trying to think of the last

7    time that there was either a motion or a hearing that was

8    not either requested to be heard on shortened time or

9    emergency or whatever in this particular Chapter 11 case,

10   which does seem to be driven sort of by this set of

11   alarmist urgency mindset.

12         For all of these reasons, Your Honor, the U.S.

13   Trustee does not believe that this motion has been properly

14   presented with sufficient evidentiary support and should be

15   denied.

16         THE COURT:  Okay.  Thank you.  All right.  Last

17   week -- well, I think within the week I denied another

18   emergency motion filed by the debtor and we've all had an

19   opportunity to look at that order and that motion was

20   denied without a hearing because I felt that it was so

21   devoid of evidence or authority that it didn't warrant

22   anyone wasting the time to come into court and present oral

23   argument.

24         The fact of a hearing today shouldn't lead anyone

25   to think that my conclusion is any different from that, but


**EXHIBIT 1**              **Page 32 of 65**

Page                                                          14

1  I wanted to make it clear today that it is becoming an

2  insult to the parties involved and to the Court to see

3  these motions filed on an emergency basis by the debtor

4  based on some, you know, faux emergency created by the

5  debtor to get some form of relief that has no cause, no

6  evidence supporting it and no basis in the Bankruptcy Code.

7          You know, there's an attempt here to expend

8  estate funds to pay counsel for an entity that is not the

9  debtor, there's no reference whatsoever to Section 327.

10 There's not even a real attempt to justify the use of

11 estate funds either in or out of the ordinary course, even

12 under Section 353.  I see absolutely no case law that was

13 submitted in support of the motion and the case law that

14 the Court was able to find for expenditure of estate funds

15 to obtain counsel is very clear that there has to be a

16 justification for use of estate funds.  And more

17 specifically, there has to be an argument and analysis that

18 employment of counsel is appropriate under the applicable

19 Code provision, Section 327 under the related rule.

20         There's no basis here whatsoever for the

21 requested relief, so I'm going to deny the motion and I

22 just want to again make it clear to the debtor that I find

23 these motions to be being most charitable on the verge of

24 frivolous motion and I hope I don't see another one then.

25         Thank you very much, everyone.  The Court will



Page                                                          15

1 | enter the order.

2 |         ATTORNEYS:  Thank you, Your Honor.

3 | (End at 3:05 p.m.)

4 |                    * * * * * * *

5 |         I certify that the foregoing is a correct

6 | transcript from the electronic sound recording of the

7 | proceedings in the above-entitled matter.

8 |

9 |

10 | _____        Date:  8/17/2016

11 | RUTH ANN HAGER, C.E.T.**D-641

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

P 888.272.0022  F 818.343.7119        www.benhyatt.com

EXHIBIT 1          Page 34 of 65

# EXHIBIT 2

LAW OFFICES OF

# CREIM MACIAS KOENIG & FREY LLP

633 WEST FIFTH STREET, 48TH FLOOR, LOS ANGELES, CA 90071  TEL (213)614-1944  FAX (213)614-1961

SKOENIG@CMKLLP.COM

July 14, 2016

**VIA EMAIL**

Hon.  Peter D. Lichtman, Ret.
JAMS
555 W. 5th Street, 32nd Floor
Los Angeles, CA 90013

Re:    **In re Fred Matthew Adelman, Debtor (Chapter 11)**
**United States Bankruptcy Court for the Central District of California**
**Case No. 1:15-bk-15952-DS**

**Glaser Weil Fink Jacobs Howard Avchen & Shapiro LLP v. Kristen B.**
**Whitney, an individual; the Watermill Flying Point Trust, by and through its**
**Trustees F. Matthew Adelman and Kristen B. Whitney, Reference No.**
**1220049793**

To the Honorable Peter D. Lichtman, Ret.:

We are bankruptcy counsel to Mr. Fred M. Adelman, the debtor and debtor in possession in the above referenced bankruptcy case currently pending in the Central District of California.  I am writing to you regarding the arbitration referenced above pending before you, which I understand is set for hearing on July 26, 2016.  This letter is to advise you that, because of Mr. Adelman's bankruptcy case, the arbitration cannot proceed against him, and should not proceed against the Watermill Flying Point Trust, or Ms. Whitney, for the reasons explained below.

First, for a myriad of reasons, Mr. Adelman, Ms. Whitney, and the Trust have been unable to retain counsel to represent them in this matter, and therefore the arbitration should be continued until they have retained new counsel.  Second, as has been explained to us, there is an issue regarding the deposition of Mr. Adelman's expert, and an order by your Honor that this deposition must go forward.  Mr. Adelman's expert is requiring payment by the Debtor before he will prepare for and appear at his deposition.  Because Mr. Adelman is in bankruptcy, payment of his fees must be approved by the Bankruptcy Court, and so until an order approving the expert's fees is entered, his deposition cannot proceed.

I:\sik\20257 (Adelman)\Letter to JAMS regarding Glaser Weil Arbitration (Final).docx

**EXHIBIT 2**                    **Page 35 of 65**

Honorable Peter D. Lichtman, Ret.
July 14, 2016
Page 2

Third, there may have been a misrepresentation to you regarding this matters readiness for Arbitration. That is not the case. There is a significant amount of discovery that needs to be conducted before the Arbitration can proceed, and without counsel, Mr. Adelman, Ms. Whitney and the Trust cannot conduct or participate in the discovery process. More importantly, because of the timing of matters in Mr. Adelman's bankruptcy, the time and energy of Mr. Adelman and Ms. Whitney are urgently needed to move this case to confirmation.

Because of the current posture of Mr. Adelman's bankruptcy case, there is no urgency or legitimate reason for the Arbitration proceeding at this time. Glaser Weil obtained relief from stay to proceed with the matter against Mr. Adelman over a year ago. Without any real explanation, they now feel compelled to push the Arbitration, after waiting over a year to proceed. This is perhaps the most inopportune time in the bankruptcy case, as Mr. Adelman is working diligently in completing his Disclosure Statement so that he can move forward with his Plan of Reorganization. In conjunction with his bankruptcy case, Mr. Adelman is also engaged in an appeal of a State Court judgment (the same State Court action out of which Glaser Weil's claim for fees arises) against him that will have a substantial impact on the distribution to creditors. Specifically, a decision on the appeal will determine whether a claim in favor of the Glaser Weil firm, or any other creditor for that matter, against Mr. Adelman's Estate, has any real value. Until the appeal is decided, and Mr. Adelman's Plan is confirmed, there will be no distribution to creditors. Given that the appeal will most likely not be heard until 2017, you can see why this Arbitration is not the most pressing of matters. Finally, because of the issues that are raised in the appeal, and the intersection of those issues and claims with the bankruptcy process, an adjudication of Glaser Weil's claim, and Mr. Adelman's defenses and counter claims, is premature at this time.

For these reasons, and others we can discuss if necessary, it is requested that you issue an immediate stay of the Arbitration and all related discovery, until such time as Mr. Adelman's Plan has been confirmed. Thank you in advance for your consideration of this request.

Very truly yours,

STUART I. KOENIG
Creim Macias Koenig & Frey LLP

SIK:sik
cc:    David Meyers, Esq.
       Sandford L. Frey, Esq (i/o)
       Daniel J. McCarthy, Esq.

I:\sik\20257 (Adelman)\Letter to JAMS regarding Glaser Weil Arbitration (Final).docx

EXHIBIT 2                     Page 36 of 65

# EXHIBIT 3

JAMS

| | |
|---|---|
| GLASER, WEIL, FINK, JACOBS, HOWARD, AVCHEN & SHAPIRO, LLP, fka GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP; | JAMS Ref. No. 1220049793 |
| | **ORDER DENYING** RESPONDENT'S REQUEST TO CONTINUE ARBITRATION HEARING SET FOR JULY 26-27, 2016 |
| Claimant, | |
| v. | |
| KRISTEN B. WHITNEY, an individual; THE WATERMILL FLYING POINT TRUST, BY AND THROUGH ITS TRUSTEES, F. MATTHEW ADELMAN and KRISTEN B. WHITNEY, | |
| Respondents. | |

The Arbitrator is in receipt of correspondence dated July 14, 2016 from Stuart I. Koenig, Esq. Law Offices of Creim Macias Koenig & Frey LLP who represent Respondents as bankruptcy counsel. It is the Arbitrator's position that the bankruptcy matter is unrelated to the arbitration at hand, as Claimants have already obtained a relief from the bankruptcy stay so that this matter may proceed. Mr. Koenig is not counsel for Respondents in this proceeding and as such has no standing to make any appearance or requests.

1

**EXHIBIT 3**          **Page 37 of 65**

Interestingly, at no time previously did Respondent indicate that additional discovery was needed prior to the commencement of the arbitration hearing. Curiously, Respondent now makes this representation through Bankruptcy counsel.

The parties were routinely notified by JAMS staff of a 45-day cancellation/continuation window with regard to the hearing. Respondents have repeatedly made requests to continue the hearing within the cancellation window. The Arbitrator previously granted the continuations in order to allow Respondent to retain counsel, however, the latest request is disingenuous as there is a repeated pattern of requesting continuations due to lack of representation.

As mentioned in the Order dated March 18, 2016, the Arbitrator finds that the matter has been on docket as of December 10, 2014 without much progress. Accordingly, the request for a continuance/stay is denied. The arbitration hearing will remain on calendar for July 26-27, 2016.

DATED:  July 15, 2016                    _____

                                         Hon. Peter D. Lichtman (Ret.)
                                         Arbitrator

2

**EXHIBIT 3**            **Page 38 of 65**

## PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: Glaser Weil Fink Howard Avchen & Shapiro, LLP vs. Whitney, Kristen B., et al.
Reference No. 1220049793

I, Jo-El Fequiere, not a party to the within action, hereby declare that on  July 15, 2016, I served the

attached ORDER DENYING RESPONDENT'S REQUEST TO CONTINUE ARBITRATION HEARING SET

FOR JULY 26-27, 2016 on the parties in the within action by Email and by depositing true copies thereof

enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, at Los Angeles,

CALIFORNIA, addressed as follows:

David A. Myers Esq.
Jonathan B. Cole Esq.
Nemecek & Cole
15260 Ventura Blvd.
Suite 920
Sherman Oaks, CA  91403-5399
Phone: 818-788-9500
dmyers@nemecek-cole.com
jcole@nemecek-cole.com
   Parties Represented:
   Glaser Weil Fink, et al.

Blaine J. Wanke Esq.
Fred M. Adelman Esq.
Milstein Adelman Jackson Fairchild & Wade, LLP
10250 Constellation Blvd.
14th Floor
Los Angeles, CA  90067
Phone: 310-396-9600
bwanke@milsteinadelman.com
fadelman@majfw.com
   Parties Represented:
   F. Matthew Adelman, Trustee
   Kristen B. Whitney, Trustee
   Watermill Flying Point Trust

Andre E. Jardini Esq.
Knapp Petersen & Clarke
550 N. Brand Blvd.
Suite 1500
Glendale, CA  91203-1904
Phone: 818-547-5000
aej@kpclegal.com
   Parties Represented:
   F. Matthew Adelman, Trustee
   Kristen B. Whitney, Trustee
   Watermill Flying Point Trust

Stuart I. Koenig Esq.
Creim Macias Koenig & Frey LLP
633 W. Fifth St.
51st Floor
Los Angeles, CA  90071
Phone: (213) 614-1944
SKoenig@CMKLLP.com

I declare under penalty of perjury the foregoing to be true and correct. Executed at Los Angeles,

CALIFORNIA on  July 15, 2016.

Jo-El Fequiere
Jfequiere@jamsadr.com

**EXHIBIT 3**                    **Page 39 of 65**

# EXHIBIT 4



JULY 22, 2016
Craig@MarguliesFaithLaw.com

<u>Sent via Email (skoenig@cmkllp.com; sfrey@cmkllp.com)</u>
Mr. Stuart I. Koenig
Mr. Sandford L. Frey
Creim Marcia Koenig & Frey LLP
633 West Fifth Street, 48th Floor
Los Angeles, CA 90071

    Re:  <u>In re Adelman, Case No. 2:15-bk-15952-DS</u>

Dear Messrs. Koenig and Frey:

I am writing in response to the "Motion for (1) Issuance of a Temporary Restraining Order; (2) Relief From Order Under FRCP 60(b)(1), (2), and (6): And (3) Issuance of a Preliminary Injunction" (the "Motion", Dkt. no. 432), filed in the above-referenced bankruptcy case, case no. 2:15-bk-15952-DS (the "Bankruptcy Case"). The Motion was filed in connection with an ex parte motion for an order shortening time (the "OST Motion", Dkt. no. 438).

The motion was filed in bad faith, without merit, and for the improper purpose to cause unnecessary delay and needless increase to the costs of litigation. Moreover, the factual allegations as to the events and circumstances of the Arbitration are simply falsely stated to the Bankruptcy Court. Glaser Weil submits that the motion and relief sought fail to meet the necessary standards for a motion, let alone a motion filed on the eve of trial in the Arbitration, as required by Rule 9011 of the Federal Rules of Bankruptcy Procedure and LBR 9011-3.

The bad faith Motion was filed after the Arbitrator denied outright the stay sought in Mr. Koenig's letter dated July 14, 2016 ("Koenig 7-14 Letter"), which was also not well taken. That letter, like the Motion, was replete with many false and misleading statements, and more importantly completely contrary the relief granted under the "Order Granting Relief from the Automatic Stay" ("Order Granting Relief from Stay Relief") entered by the United States Bankruptcy Court over a year ago.

Mr. Koenig, a well-seasoned bankruptcy lawyer, should know better than to seek to do an end-run around the Bankruptcy Court's Stay Relief Order that authorized this Arbitration to proceed by instead seeking to argue (albeit improperly) directly to the Arbitrator on the eve of trial for a stay. In fact, the very same arguments which Mr. Koenig alleged in the Koenig 7-14 Letter were considered and overruled by the Bankruptcy Court in granting the Stay Relief Order. Further, the Motion seeks to reargue the same arguments that were previously overruled without any new facts, mistake, or fraud. Clearly, the relief sought in the Motion, like in the Arbitration, should and likely will be immediately denied out of hand, with the Arbitration proceeding as scheduled.

In addition to the foregoing, your firm does not represent either Respondent Kristen B. Whitney or Respondent Watermill Flying Point Trust. Since you do not represent any party in the Arbitration, the relief sought in the Motion are wholly improper for that reason alone. Mr. Adelman (who is not one of the Respondents) is the only party in bankruptcy. And the bankruptcy Court specifically ordered that this arbitration be allowed to proceed. (See Exhibit "1", Order Granting Relief from Stay Relief)

16030 Ventura Boulevard, Suite 470, Encino, California 91436
T: 818-705-2777 | F: 818-705-3777 | www.MargulieFaithLaw.com

**EXHIBIT 4**          **Page 40 of 65**

Mr. Stuart I. Koenig
Mr. Sandford L. Frey
July 22, 2016
Page 2

In fact, these proceedings need to go forward so that the Glaser Weil law firm's claim can be liquidated.  Although you do not represent Respondents, you claim they have been "unable to retain counsel."  In fact, however, Respondents retained many lawyers and law firms to represent them, and they have had ample time to retain additional or different counsel if that is what they wanted to do (i.e., over 6 months).  The Superior Court ordered Respondents' prior counsel, Klein & Wilson, be allowed to withdraw as counsel for Respondents on January 13, 2016, more than six months ago.  (See Order Allowing Klein & Wilson to Withdraw at Exhibit 2.)   And Mr. Adelman has retained many attorneys since he filed for bankruptcy (e.g., he has retained approximately 15 new special counsel and general counsel in this bankruptcy case.)  Respondents have also been represented by many attorneys.  Mr. Adelman, an attorney himself with the law firm of Milstein Adelman, and a second attorney, Mr. Blaine Wanke, have represented Respondents at various times since Klein & Wilson withdrew.  Before that, Respondents were also represented by at various times by many other attorneys and law firms.  There is no reason Mr. Adelman or Respondents could not have retained other attorneys to represent Respondents if they had elected to do so, and filed a motion with the Court for approval (if you believe it was needed).

Respondent Whitney and Mr. Fred Adelman have an extensive history of hiring and firing a plethora of attorneys and law firms.  Respondent Whitney and Mr. Adelman have been parties in at least 96 lawsuits, at least 42 as plaintiffs.   They are professional litigants.

Respondent Whitney and Mr. Adelman are highly adept at gaming the system and engaging in tactics that have blocked Claimant's fee dispute from being resolved for nearly five years.  These tactics began during the non-binding fee arbitration proceedings before the LA County Bar Association ("LACBA") that Respondent Whitney commenced on September 19, 2011.   In an endless display of gamesmanship, Respondents filed one motion to disqualify after another.  They eventually filed papers against nine of the arbitrators assigned by the LACBA (in a non-binding proceeding!), and then frivolously appealing some of the denials.  In addition, Respondents filed multiple motions to disqualify Claimant's counsel, expert, and the JAMS arbitrator Respondents had agreed upon.  While all of Respondents' disqualification motions were denied, they did accomplish what they are attempting to accomplish now:  endless delay.    The Motion is a mere attempt at further bad faith delay.

In the Motion you claim that the Bankruptcy Court must approve Mr. Adelman's expert.  Respondents have however been representing that they were going to "seek approval" from the Bankruptcy Court for their expert for at least nine months, or as far back as October 15, 2015.   Since that time, there have been many requests to the Bankruptcy Court for payment of professionals – including your firm itself.  Where was the request for approval of payment to an alleged "expert"?  Since Respondents are not debtors in bankruptcy, they do not need bankruptcy court approval for payment of an expert, but had ample time to do so if they believed it was necessary.  Regardless, there is no excuse for not seeking approval to the extent that was even necessary long before now.

In addition, Mr. Adelman (as counsel for Respondents) recently filed briefs attempting to oppose Claimant's motion to compel the deposition of/ exclude Respondents expert, yet Mr. Adelman never indicated that the reason the deposition of Respondents' expert could not go forward was (allegedly) because their expert had not been paid, and was therefore refusing to prepare or appear.  Rather, Respondents' opposition papers indicated that it was only an alleged lack of more notice that somehow prevented that deposition from going forward.

Koenig argues "Mr. Adelman's and Mrs. Whitney's time and energy are urgently need to move this case (referring to the bankruptcy case) to confirmation."  Aside from the fact that Mrs. Whitney did not file for bankruptcy and that Mr. Adelman is not a party, Mr. Adelman's bankruptcy was filed on April 18, 2015, well over one year ago.  Besides, just recently July 14, 2016, your firm filed for Mr. Adelman a request to extend the deadline to confirm a Plan of Reorganization in his Bankruptcy Case until December 2016 (6 months away).

**EXHIBIT 4**                    **Page 41 of 65**

Mr. Stuart I. Koenig
Mr. Sandford L. Frey
July 22, 2016
Page 3

In regard to Confirmation, clearly the Glaser Weil claim needs to be liquidated for confirmation and voting purposes. Currently, per the Plan language, Glaser Weil will not be able to vote because the Debtor scheduled the claim as disputed, contingent and unliquidated.  You are seeking to now shift the burden to Glaser Weil to seek to require the bankruptcy court to estimate the claim prior to confirmation when the Claim can and will be determined on the merits next week.

You representation that Claimant "waited over a year" to proceed with arbitration is just false.  Arbitration before JAMS was delayed first by Respondents election to proceed with fee arbitration before the LA County Bar, and then after they rejected that award had to be compelled by order of the Superior Court to honor their agreement to binding private arbitration. Thereafter, Respondents caused further delays by seeking many continuances (as confirmed by the Arbitrator in his recent order denying the stay request) (e.g., to bring in new counsel),

Contrary to the representations in the Motion, there are urgent and legitimate reasons to proceed with the arbitration.  Not only have Respondents delayed the resolution of Claimant's fee collection matter for nearly five years, the bankruptcy court also needs Glaser Weil's claim to be liquidated.  You disingenuously make arguments that were rejected by the bankruptcy court more than one year ago when the bankruptcy court issued its first order granting Claimant relief from stay regarding these proceedings.  It is improper to make such arguments again now (as you did to the arbitrator) under the false statements that there is new evidence, when the bankruptcy court clearly considered and rejected them more than a year ago.

Based upon the foregoing, and pursuant to FRBP 9011 and LBR 9011-3, please consider this letter Glaser Weil's demand that the Motion be immediately withdrawn, or be subject to a motion for an order awarding sanctions.  Please be further informed that notwithstanding anything stated or omitted in the correspondence above, Glaser Weil hereby reserves any and all rights, claims, and damages.

Very truly yours,

Craig G. Margulies

cc:  Jonathan B. Cole, Esq.
     David Myers, Esq.
     Peter Weil, Esq.

**EXHIBIT 4**                    **Page 42 of 65**

# EXHIBIT 5

FILED & ENTERED

JUL 28 2016

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY egarcia    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re: Fred Adelman | Case No. 15-bk-15952-DS |
| | Chapter 11 |
| Debtor(s). | **ORDER DENYING MOTION FOR ISSUANCE OF A TEMPORARY RESTRAINING ORDER, RELIEF FROM AN ORDER PURSUANT TO FRCP 60(B), AND ISSUANCE OF A PRELIMINARY INJUNCTION** |

On July 1, 2015, Glaser, Weil, Fink, Howard, Avchen, & Shapiro, LLP ("Glaser Weil") filed their "Notice of Motion and Motion for Relief from Automatic Stay with Supporting Declarations" (the "Relief from Stay Motion," Docket No. 62). The Relief from Stay Motion sought to continue with arbitration (the "Arbitration") between Glaser Weil and the above-captioned Debtor's wife and the Watermill Flying Point Trust (the "Trust") by and through its trustees, the Debtor and his wife. On July 8, 2015, the Debtor filed his "Opposition to Notice of Motion and Motion for Relief from Automatic Stay" (the "Opposition to the Relief from Stay Motion," Docket No. 72). A hearing was held on July 22, 2015 to consider the Relief from Stay Motion and all filings related thereto. After the hearing, the court granted the Relief from Stay Motion and the "Order Granting Motion for

EXHIBIT 5          Page 43 of 65

1  Relief from Automatic Stay" (the "Order Granting Relief from Stay," Docket No. 98) was
2  entered on July 27, 2015.

3        On July 21, 2016 – a year after the hearing on the Relief from Stay Motion – the
4  Debtor filed the "Notice of Motion and Motion for (1) Issuance of a Temporary Restraining
5  Order; (2) Relief from Order Under FRCP 60(b)(1),(2) and (6) Made Applicable to
6  Bankruptcy Proceedings Pursuant to FRBP 9024; and (3) Issuance of a Preliminary
7  Injunction." (the "Motion," Docket No. 432).  The Motion seeks a temporary restraining
8  order and preliminary injunction to halt the Arbitration scheduled to proceed on July 26,
9  2016.  The Motion also requests relief under FRCP 60(b) from the Order Granting Relief
10  from the Automatic Stay.  On July 24, 2016, Glaser Weil filed the "Opposition to Debtor's
11  Motion for (1) Issuance of a Temporary Restraining Order; (2) Relief from Order Under
12  FRCP 60(b)(1),(2) and (6) Made Applicable to Bankruptcy Proceedings Pursuant to FRBP
13  9024; and (3) Issuance of a Preliminary Injunction." (the "Opposition," Docket No. 441).

14        The court has read and considered the Motion and the Opposition and will dispense
15  with the Motion without a hearing.  Under Local Bankruptcy Rule 9013-1(j), the court, in its
16  discretion, may dispense with oral argument.  L. Bankr. R. 9013-1(j).

17        The Motion requests that the court issue a temporary restraining order and
18  temporary injunction.  However, pursuant to Local Bankruptcy Rule 7065-1(a) "A
19  temporary restraining order or preliminary injunction may be sought as a provisional
20  remedy only in a pending adversary proceeding, not in the bankruptcy case itself. An
21  adversary complaint must be filed either prior to, or contemporaneously with, a request for
22  issuance of a temporary restraining order (TRO) or preliminary injunction."  L. Bankr. R.
23  7065-1.  The Debtor had not filed an adversary proceeding related to the Motion before
24  filing the Motion, nor did the Debtor file an adversary proceeding contemporaneously with
25  the Motion.  Because LBR 7065-1(a) only permits a party to seek a temporary restraining
26  order or temporary injunction in a pending adversary proceeding, the court cannot grant
27  the Debtor a temporary restraining order or a preliminary injunction.

28

**EXHIBIT 5**            **Page 44 of 65**

1    The Debtor also requests relief from the Order Granting Relief from Stay pursuant

2  to Fed. R. Civ. P. 60(b), made applicable to this proceeding by Fed. R. Bankr. P. 9024.

3  The Debtor specifically requests relief from the Order Granting Relief from Stay pursuant

4  to Fed. R. Civ. P. 60(b)(1), (2), and (6).  Fed. R. Civ. P. 60(b)(1) permits relief from an

5  order based on "mistake, inadvertence, surprise, or excusable neglect.".  Fed. R. Civ. P.

6  60(b)(2) permits relief from an order if there is "newly discovered evidence that, with

7  reasonable diligence, could not have been discovered in time to move for a new trial under

8  Rule 59(b)."  Fed. R. Civ. P. R. 60(b)(6) permits relief from an order "for any other reason

9  that justifies relief."  As noted by the Ninth Circuit, "[r]elief under exception (6) requires a

10  finding of 'extraordinary circumstances.'"  *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th

11  Cir. 1985).  Here, the Debtor has not shown any circumstances warranting relief from the

12  Order Granting Relief from the Automatic Stay under Fed. R. Civ. P. 60(b).

13    The Debtor asserts that the Arbitration is a distraction from the Debtor's

14  responsibilities as a debtor in possession and is creating delays in the bankruptcy

15  proceeding.  The Debtor made this same argument in his Opposition to the Relief from

16  Stay Motion, where he asserted that "Mr. Adelman would be diverted from attending to

17  issues in the instant bankruptcy because he would be deeply involved in the arbitration"

18  (Opposition to the Relief from Stay Motion; 6: 26).  Because the Debtor raised the same

19  issues in the Opposition to the Relief from Stay Motion, the court has already considered

20  the Debtor's argument that the Arbitration will distract the Debtor from the bankruptcy

21  proceeding; this is not a new argument warranting relief under Fed. R. Civ. P. 60(b).

22    The Debtor also asserts that when Glaser Weil brought the Relief from Stay Motion

23  it argued that the Arbitration would proceed quickly and that this has proven untrue.  The

24  Debtor's argument fails to acknowledge that the Arbitration was set to proceed on July 26,

25  five days from the date the Debtor filed the Motion.  Any current delay in the Arbitration

26  would be created by the Debtor bringing the Motion, which seeks to prevent the Arbitration

27  from taking place on its currently scheduled date.  Further, the Debtor has never contested

28  or offered any evidence to contradict the Motion for Relief from Stay's contention that the

**EXHIBIT 5**          **Page 45 of 65**

1    Arbitration was set for June 24-June 26, 2015 and did not take place on those dates

2    because of the Debtor's bankruptcy filing (Motion for Relief from the Automatic Stay,

3    Declaration ¶ 5 and Exhibit 7). Given that there was already a date set for the Arbitration

4    pre-petition, the contention in the Relief from Stay Motion that the Arbitration was ready to

5    proceed was not untrue. While there have been delays since the Order Granting Relief

6    from Stay was entered, there is evidence that the Debtor contributed to delays in the

7    Arbitration. (Opposition, Exhibit 3 and Declaration of David A. Myers in support of the

8    Opposition, Exhibits 6 and 9).[1] This evidence suggests that the Debtor may have brought

9    the Instant Motion in a further attempt to delay the Arbitration after a continuance of the

10    July 26, 2016 arbitration date was denied by the arbitrator. (*See* Opposition, Exhibit 3:

11    order denying request by the Debtor's bankruptcy counsel to continue the Arbitration set to

12    begin on July 26, 2016). Any delay that may have occurred in the Arbitration does not

13    constitute mistake, inadvertence, surprise, or excusable neglect; nor are these

14    circumstances newly discovered evidence that warrants relief from the Order Granting

15    Relief from the Automatic Stay. Further, any delay in the Arbitration is not an extraordinary

16    circumstance warranting relief from the Order Granting Relief from the Automatic Stay.

17    The next argument made by the Debtor is that relief is needed because proceeding

18    with the Arbitration does not promote judicial economy. Again, this was an argument

19    made by the Debtor in the Opposition to Relief from Stay Motion. The Debtor previously

20    asserted that "there would be absolutely no judicial economy realized by proceeding with

21    the arbitration at this point." (Opposition to Relief from Stay Motion 7:13-14). The Debtor

22    might argue that his judicial economy argument is new because he is, for the first time,

23    asserting that proceeding with the Arbitration is wasteful because Glaser Weil is an

24    unsecured creditor and unsecured creditors will not receive 100% for their claims in this

25    case. However, it is simply untrue that judicial economy will not be served by permitting

26    _____
    [1] Exhibit 3 to the Opposition is an order entered in the Arbitration denying a further continence of the
27    Arbitration requested by the Debtor's bankruptcy counsel. The order notes that several extensions have
    been requested by the "respondents" which include the Debtor's wife, the Trust, and the Debtor as trustee of
    the Trust. Exhibit 6 to the Declaration of David A. Myers in support of the Opposition to the Instant Motion is
28    a scheduling orders continuing the Arbitration based on an agreement by the parties. Exhibit 9 to the
    Declaration of David A. Myers in support of the Opposition is a letter sent by the Debtor's counsel requesting
    a further 30 day continuance of the Arbitration.

-4-

EXHIBIT 5          Page 46 of 65

1  the Arbitration to proceed.  The Arbitration has progressed to a trial date and has an

2  arbitrator familiar with the facts and law at issue in the dispute.  Proceeding with the

3  Arbitration is the most efficient means of liquidating Glaser Weil's claim.  Were the Debtor

4  to object to Glaser Weil's claim instead of liquidating the claim through Arbitration, this

5  court would have to learn all of the facts of the dispute and the parties would need to brief

6  the legal issues for this court.  In contrast, the Arbitration has been pending for years and

7  an arbitrator is currently ready to consider the parties' arguments and issue a ruling.

8  Proceeding with the Arbitration will most quickly liquidate this claim and best promote

9  judicial economy.[2]  Accordingly, the Debtor's argument about judicial economy does not

10 warrant relief under Fed. R. Civ. P. 60(b).

11     The Debtor also argues that he is entitled to relief under Fed. R. Civ. P. 60(b)

12 because permitting Glaser Weil to proceed with the Arbitration is causing other parties to

13 seek relief from the automatic stay.  There is simply no evidence that the order granting

14 Glaser Weil's Motion for Relief from Stay has led other parties to seek this relief.  The

15 Debtor was engaged in pre-petition litigation with numerous parties, many of whom have

16 sought relief from the automatic stay to continue with the pre-petition litigation.  The other

17 requests for relief from the automatic stay in this case are likely the result of the Debtor

18 having been engaged in much pre-petition litigation – not the result of other creditors

19 mimicking Glaser Weil.  There is no basis to grant relief from the Order Granting Relief

20 from Stay based on similar motions being filed in this case.

21     The Debtor further contends that relief under Fed. R. Civ. P. 60(b) is necessary

22 because the Arbitration is causing a great expense to the estate.  The court considered

23 this argument before issuing the Order Granting Relief from the Automatic Stay because

24 the Opposition to the Motion for Relief from Stay asserted "proceeding with another more

25 formal arbitration process will be extremely expensive, time-consuming and will drain the

26 bankruptcy estate of substantial assets on an administrative basis, estimated to exceed

27

28 _____
[2] This argument also fails to acknowledge that there is a pending adversary proceeding against the Debtor for denial of discharge pursuant to 11 U.S.C. § 727. If this adversary proceeding results in the denial of the Debtor's discharge, it will be imperative for Glaser Weil to have had their claim liquidated.

**EXHIBIT 5          Page 47 of 65**

1  $100,000." (Opposition to Relief from Stay Motion; 6: 22-24). The court has already

2  considered this argument and granted the Motion for Relief from Stay despite this

3  argument. Accordingly, this is not an argument that the Debtor can raise to assert that he

4  is entitled to relief from the Order Granting Motion for Relief from Stay under Fed. R. Civ.

5  P. 60(b).

6        Finally, the Motion argues that the Arbitration should not go forward because the

7  Debtor will not be permitted to have his expert testify at the Arbitration. The Debtor asserts

8  that his expert cannot testify because he was not able to obtain bankruptcy court

9  authorization to pay his expert before the expert's scheduled deposition. It must be noted

10  that, to the extent this court's authorization was required to pay the expert a retainer, the

11  Debtor has never filed a motion seeking such relief. After the court entered the Order

12  Granting Relief from Stay on July 27, 2015, the Arbitration was set for November 30, 2015-

13  December 2, 2015 (Declaration of David A. Myers in Support of the Opposition, Exhibit 6).

14  After some continuances, on March 18, 2016, the Arbitration was set for July 26-28, 2016.

15  (Declaration of David A. Myers in Support of the Opposition, Exhibit 18). The Debtor had

16  several months to file any motion he believed was necessary to pay an expert a retainer

17  before the Arbitration and no such motion was brought. The Debtor also asserts that his

18  expert's deposition was scheduled for July 8, 2016 and notice of the deposition was sent

19  out on June 29, 2016. (Motion 18: 17-21). Even at this critical time, the Debtor did not

20  seek emergency relief from this court to pay the retainer the Debtor claims the expert was

21  demanding to appear at the deposition. The Debtor had ample time to seek whatever

22  relief he believed was necessary from this court to proceed with his expert witness in the

23  Arbitration. The Debtor's failure to seek relief from this court to ensure that his expert

24  could testify at this Arbitration is not grounds for this court to set aside the Order Granting

25  Relief from Stay.

26  ///

27  ///

28  ///

-6-

**EXHIBIT 5**          **Page 48 of 65**

1    For all of these reasons,

2    IT IS HEREBY ORDERED that the Motion is denied.

3              ###

Date: July 28, 2016

_____
Deborah J. Saltzman
United States Bankruptcy Judge

-7-

EXHIBIT 5            Page 49 of 65

# EXHIBIT 6

JAMS

| | |
|---|---|
| GLASER, WEIL, FINK, JACOBS, HOWARD, AVCHEN & SHAPIRO, LLP, fka GLASER, WEIL, FINK, JACOBS, HOWARD & SHAPIRO, LLP; | JAMS Ref. No. 1220049793 **INTERIM AWARD** |
| Claimant, | |
| v. | |
| KRISTEN B. WHITNEY, an individual; THE WATERMILL FLYING POINT TRUST, BY AND THROUGH ITS TRUSTEES, F. MATTHEW ADELMAN and KRISTEN B. WHITNEY, | |
| Respondents. | |

**The Undersigned Arbitrator,** having been designated by the parties, and having read and considered the submissions, documentary and testimonial proof,

1

**EXHIBIT 6**          **Page 50 of 65**

arguments and allegations of the parties, finds and concludes and issues this Interim Award, as follows:

## I.    Introduction

This matter concerns a dispute over attorneys' fees and costs that have been owed by Respondents Kristen B. Whitney ("Whitney") and the Watermill Flying Point Trust ("Respondent Trust"), by and through its trustees, F. Matthew Adelman ("Adelman") and Kristen Whitney (collectively, "Respondents") to Claimant Glaser Weil Fink Howard Avchen & Shapiro, LLP ("Glaser Weil"). In September 2011, Respondents petitioned for fee arbitration before a three member panel of the LA County Bar Association ("LACBA"). On July 29, 2014, a panel of LACBA arbitrators issued an award in favor of Glaser Weil. The award was non-binding, and Respondents rejected it. Thereafter, Glaser Weil sought resolution by binding arbitration. Because Respondents refused, Glaser Weil filed a motion to compel binding arbitration in the Los Angeles Superior Court. The motion was granted, and these proceedings followed.

## II.    Background

### A.    Factual Summary

On or about July 15, 2010, after Respondents terminated their prior counsel, Respondents retained Glaser Weil to represent them in a construction defect case: Watermill Flying Point Trust v. Sheppard Concrete, et al., Los Angeles Superior Court, Case No. BC428605 ("Underlying Action"). Glaser Weil represented Respondents until being terminated on or about March 4, 2011.

When Respondents decided to retain Glaser Weil, they told Mr. Sheridan they wanted someone to actively and aggressively litigate their construction defect lawsuit. In particular, they referenced issues such as a motion to disqualify one of the defense counsel, development of a favorable case management order,

2

**EXHIBIT 6**              **Page 51 of 65**

discovery, third party subpoenas, and other issues.  According to Respondents, their former counsel could not timely handle these issues in the manner they wanted or felt they deserved.  Respondents also wanted to be represented by a top tier law firm.  They claimed that the total amount of fees they incurred in the Underlying Action for all of their attorneys is approximately $5 million.

There were at least twenty-two parties in the Underlying Action, claims in related cases, and several cross-complaints that were filed and prosecuted therein. Respondents would eventually seek $6.8 million in damages to raze and rebuild their alleged defective mansion.  The Underlying Action generated an 82-page docket.  The approach desired by Respondents was to fight and win every issue. Respondents were closely involved in Glaser Weil's representation of them and insisted upon having a great deal of communication with Glaser Weil attorneys. During its representation of Respondents, Glaser Weil achieved important victories that were important to Respondents, including:  winning a motion to disqualify counsel, winning a key motion to compel Arrache, the general contractor defendant, to have to provide additional discovery, and a win on the case management order.  Respondents incurred approximately $5 million in attorneys' fees for all of their legal fees owed to the various lawyers and law firms in the Underlying Action.

### B.    Procedural Summary

On February 9, 2015, Glaser Weil submitted its First Amended Complaint for Damages.  Respondents then submitted their Response to Claimant's First Amended Complaint.

On April 16, 2015, Respondents filed a Bankruptcy Petition with the Bankruptcy Court.

On July 1, 2015, Glaser Weil filed a Motion for Relief from Automatic Stay with the Bankruptcy Court.  Glaser Weil sought to continue with the arbitration in

3

EXHIBIT 6            Page 52 of 65

this matter.  Following a hearing on July 22, 2015, the Bankruptcy Court granted the Relief from Stay Motion, and the Order Granting Motion Relief from Automatic Stay was entered on July 27, 2015.

On August 13, 2015, the Arbitrator's case manager, Anne Lieu ("Lieu"), proposed arbitration dates of November 9-13, 6-20 or 23-25.  On or before September 3, 2015, Glaser Weil's counsel informed Lieu that the November 18-20, 2015 dates proposed for arbitration were acceptable.  On September 9, 2015, Mr. Blaine Wanke, one of the many lawyers who have represented Respondents in the past, wrote to Lieu apologizing for Respondents' delay and stating that Mr. Adelman was trying to coordinate schedules and that he would get back to her as soon as possible.  On September 9, 2015, Lieu wrote to counsel that because of the Arbitrator's calendar, it was important to select dates as soon as possible for the arbitration and requested agreements on dates for the arbitration within a week. Wanke replied that Respondents would respond within a week as requested. However, there was no further response from Respondents until September 15, 2015, when Adelman responded that additional time was needed because Gerald Klein was just ordered to be employed by the bankruptcy court, and because Respondents needed to obtain permission from the Bankruptcy Court to retain and compensate an expert.  Adelman also wrote that additional time was needed because Whitney was going to be undergoing surgery.

Pursuant to an order of the Arbitrator dated September 17, 2015, the arbitration was scheduled for November 30, 2015 through December 2, 2015.  On September 22, 2015, Wanke wrote that the Bankruptcy Court had just approved retention of counsel for the arbitration and requested additional time for Adelman to select counsel and then for Respondents' future counsel to get up to speed on the case.  By letter dated October 15, 2015, Klein wrote to the Arbitrator requesting a continuance of the November 30, 2015 arbitration date to obtain approval from the

4

EXHIBIT 6                    Page 53 of 65

Bankruptcy Court before his expert could start work and because Whitney was ill and needed to undergo surgery. Klein also wrote to the Arbitrator that an additional reason he needed to get the arbitration continued was so that he could petition the Bankruptcy Court for payment of the arbitration fees. Lieu informed counsel that the next available date for the arbitration was January 11, 2016. On October 18, 2015, the parties agreed to the continuance requested by Klein.

On October 21, 2015, the Arbitrator expressed concerns because the Bankruptcy Court's order granting relief from automatic stay indicated that the arbitration had to be completed within 180 days from July 27, 2015. Klein was requested to seek an extension of the apparent expiration of the 180-day deadline referenced in the order from the Bankruptcy Court. On October 21, 2015, JAMS notified all parties that the arbitration had been officially continued to January 11-13, 2016.

On or about November 20, 2015, Respondents' counsel appeared in the Los Angeles Superior Court on an ex parte application to shorten time for a hearing on a motion to disqualify Glaser Weil's expert witness and a motion to disqualify Glaser Weil's counsel. The Superior Court declined jurisdiction and ruled that such motion had to be presented to the Arbitrator. A hearing on Respondents' disqualification motions took place before the Arbitrator on or about December 22, 2015. On January 6, 2016, the Arbitrator issued an order denying Respondents' motions to disqualify.

The arbitration scheduled on January 11, 2016 did not proceed after Respondents continued to fail to pay their JAMS fees, and because of concerns about not violating the 180-day language in the Bankruptcy Court's order granting relief from automatic stay. On or about January 13, 2016, upon application, the Superior Court granted Klein's application to withdraw as counsel for Respondents.

5

**EXHIBIT 6**          **Page 54 of 65**

Glaser Weil's bankruptcy counsel filed a motion for order clarifying the order granting the motion for relief from stay, or in the alternative, amending the order granting the motion for relief from stay on February 3, 2016 to address the 180-day language in the Bankruptcy Court's first order granting relief for the automatic stay.  An order granting the motion was issued on March 9, 2016.

On March 18, 2016, the Arbitrator issued an order setting evidentiary hearing dates from July 26-28, 2016.  On April 1, 2016, a further notice of the arbitration hearing was issued.  On April 26, 2016, JAMS issued another request to Respondents to post their arbitration fees, which had to be paid in full by May 26, 2016, in order to keep the arbitration dates on calendar.  Despite multiple requests by JAMS, Respondents never paid their fees.  In order to keep the arbitration on calendar, Glaser Weil advanced Respondents' share of the fees.

On June 15, 2016, Glaser Weil filed a Motion to Exclude Respondents' Expert, or in the Alternative, to Compel the Deposition of Respondents' Expert. On June 29, 2016, the Arbitrator issued an Order Denying the Request to Exclude Respondents' Expert and Granting the Request to Compel the Deposition of Lebovic (Respondents' Expert).  The deposition was required to take place within 7 days of that Order.

Following a Notice of Deposition on Respondents' expert and Respondents' response that they were unavailable, Glaser Weil filed a Request for an Order Excluding Respondents From Offering Expert Testimony for Failing to Comply with the June 29 Order.  On July 18, 2016, the Arbitrator issued an Order Granting Glaser's Motion for an Order Excluding Respondents From Offering Expert Testimony.

On July 14, 2016, bankruptcy counsel for Adelman wrote a letter to the Arbitrator requesting a continuance of the arbitration.  On July 15, 2016, the Arbitrator issued an Order Denying Respondents' Request to Continue the

6

EXHIBIT 6          Page 55 of 65

Arbitration.  Glaser Weil submitted an Arbitration Brief and Compendium of
Exhibits.

The Arbitration took place on July 26, 2016.  Mr. David Myers of Nemecek
& Cole appeared for Glaser Weil.  Mr. Peter Sheridan and Mr. Pete Slevin of
Glaser Weil appeared.  Respondent Kristen Whitney appeared individually and in
her capacity as co-trustee of Respondent Trust.  Respondent Trust also appeared
through its co-trustee, attorney Adelman.

### III.    Analysis

#### A.    Operative Pleadings in the Arbitration

In the First Amended Complaint, Glaser Weil alleges causes of action for
Breach of Contract, Common Counts, Account Stated and Quantum Meruit.  The
FAC pleads the written retainer agreement ("Agreement") that Respondents
executed, Respondents' account, their indebtedness to Glaser Weil, and the
reasonable value of Claimant's services.  Glaser Weil seeks an award for the
unpaid fees and costs in the Underlying Action, interest on the unpaid bills as
provided in the Agreement, and attorneys' fees, expert fees, costs and expenses if it
is the prevailing party as also provided for in the Agreement.

In their Response to Glaser Weil's First Amended Complaint, Respondents
allege Glaser Weil's fees are unconscionable, "out-of-scale" with the case, that
Glaser Weil "breached a written promise to limit billings," that Glaser Weil's bills
were untimely and out of control.  Respondents also allege that Glaser Weil's bills
were improper because Glaser Weil attorneys billed in minimum increments of .25,
contained vague entries, billed for "overhead," engaged in excessive interoffice
conferencing, block billed, utilized multiple attorneys at court hearings and
meetings, and did not fairly compute costs.

#### B.    Applicable Law

Section 6147 of the California Business and Professions Code generally

7

**EXHIBIT 6**              **Page 56 of 65**

requires attorneys to have written contracts for services.  Additionally, Section

6147(b) sets for the requirements an attorney must comply with in a bill to the

client.  It provides, in pertinent part:

> All bills rendered by an attorney to a client shall clearly state the basis
> thereof.  Bills for the fee portion of the bill shall include the amount,
> rate, basis for calculation, or other method of determination of the
> attorney's fees and costs.  Bills for the cost and expense portion of the
> bill shall clearly identify the costs and expenses incurred and the
> amount of the costs and expenses.

An attorney's failure to comply with the provisions set forth in Section 6147

renders the fee agreement voidable at the option of the client.

Under California law, Rule of Professional Conduct 4-200 sets forth the

standards for charging fees for legal services to a client.  Rule 4-200 prohibits an

attorney from entering into an "agreement for, charge, or collection [of] an illegal

or unconscionable fee."  Under this rule, whether or not a fee is unconscionable is

determined by analyzing several factors, such as:  (1) the amount of the fee in

proportion to the value of the services performed; (2) the relative sophistication of

the member and the client; (3) the novelty and difficulty of the questions involved

and the skill requisite to perform the legal service properly; (4) the amount

involved and the results obtained; (5) the experience, reputation, and ability of the

member or members performing the services; and (6) the informed consent of the

client to the fee.

### C.   Glaser Weil is Awarded Its Fees and Costs From the Underlying Action

In the Arbitration, Glaser Weil presented its retainer agreement

("Agreement") with Respondents, which Respondent Whitney signed not only on

**EXHIBIT 6**              **Page 57 of 65**

behalf of Respondent Trust, but also individually.[1]  Pursuant to the Agreement,
Respondents agreed to be jointly and severally liable for payment of Glaser Weil's
fees and costs.  Glaser Weil also presented all of the invoices that were sent to
Respondents, and its statement of account showing the amount of the invoices, the
amounts of the payments, and the outstanding balance of fees and costs
Respondents still owe.  In addition the invoices describing the legal services
provided, Sheridan and Slevin provided testimony regarding the legal services
provided.  Sheridan's and Slevin's testimony was detailed and articulate,
explaining that the underlying construction defect litigation contained complex and
time-consuming issues, as well as the involvement of more than twenty-two
parties.  Sheridan's and Slevin's testimony was credible, corroborating both the
work performed and the accuracy of the time billed.  Adelman's testimony failed
to controvert Glaser Weil's testimony and evidence.  Instead of addressing the
reasonableness of the work performed and corresponding fees, Adelman testified
about Respondents' budget and whether certain work done by Glaser Weil was
partially performed by other law firms prior to Glaser Weil's entry into the
underlying case.  Simply put, Adelman's testimony was not credulous.

        Based on the evidence and testimony presented by Glaser Weil, the
Arbitrator finds that Glaser Weil's legal services provided to Respondents were
reasonable and that Glaser Weil's fees to Respondents were not excessive or
unconscionable.  The evidence showed that the time billed, rates charged and costs
incurred were in accord with the Agreement.  By contrast, Respondents provided
no evidence that any of the time billed, rates charged or costs incurred were

_____

[1] Respondents argue that the Agreement does not bind the trust or Adelman
because only Whitney signed the Agreement individually and on behalf of the
trust.  As Glaser Weil argues, however, Adelman ratified the Agreement on behalf
of Respondent Trust through partial performance (payments) and Adelman's
involvement and frequent communications with Glaser Weil, as well as his current
and extensive involvement in this Arbitration.

9

EXHIBIT 6                    Page 58 of 65

incorrect, improper or excessive.  The evidence showed that Glaser Weil prevailed on many of Respondents' litigation goals such as a motion to disqualify counsel, discovery motions, the case management order, and opposing a motion to designate the subject action complex.  Respondents' cross-examination of Sheridan and Slevin failed to controvert any of this testimony.

Despite his testimony that he was generally concerned about the level of Glaser Weil's billing, Adelman also testified that Respondents did not seek to replace Glaser Weil as counsel until March 2011.  Moreover, the evidence shows that Adelman and Whitney are sophisticated litigants, and Adelman himself has been an attorney since 1987 and is a senior partner at his law firm, Milstein Adelman, where he oversees the construction defect litigation group.  Between November 1985 and November 2009, there were ninety-four actions filed on behalf of or against Adelman and Whitney.  Among these actions, Adelman and Whitney were the plaintiffs in forty of them.  Clearly, they have experience with fee agreements, lawsuits and attorneys.  This evidence belies any assertions that Respondents were "vulnerable" or unable to communicate their alleged dissatisfaction or were somehow unaware of the work and time required.  Respondents continued with Glaser Weil as their counsel because they were receiving highly competent work and receiving the results and level of service they wanted.

The Arbitrator additionally finds that Respondents failed to establish any of their alleged defenses at the Arbitration.  First, while Respondents alleged that the billing by Glaser Weil was "untimely," they did not offer any support to show that the time when the invoices were issued somehow breached the Agreement.  Next, Respondents alleged that Glaser Weil's billing was "vague," yet the evidence showed that Respondents were involved in the underlying action, frequently communicating with Glaser Weil about the work being performed.  There was no

10

**EXHIBIT 6**          **Page 59 of 65**

evidence that Respondents complained about the bills being vague or raised questions about what legal services were being provided.  Respondents also alleged that "Glaser Weil breached its promise in writing to limit billing" based upon a brochure, but there was no evidence of any such promise.  Furthermore, the Agreement clearly provides:

>    5.    Fees and Billing
>
> .
>
>    (a) Estimates.  Although we may from time to time, for your convenience or at your request, furnish you with estimates of the amounts of fees which we anticipate may be incurred for services performed by us, such estimates are by their nature inexact and speculative and are not binding on either you or us.

Respondents further alleged that the billing was "out of scale" to the Underlying Action.  However, Adelman admitted that Respondents hired multiple attorneys in the underlying action and spent approximately $5 million in attorneys' fees.  As such, Glaser Weil's fees and costs were only a fraction of that total. Adelman also testified that the value of the "cost to repair damage" was $6-7 million.  Furthermore, as stated above, the evidence and testimony showed that Glaser Weil performed substantive work that advanced Respondents' case and litigation goals, such as the 37-page CMO, a Motion to Quash a Subpoena directed to Union Bank, the drafting of an amended complaint, and various discovery. Indeed, as Glaser Weil points out, the invoices reflect that multiple entries (more than 179) are for communication with Adelman and Whitney.

Finally, Respondents alleged that Glaser Weil's bills contain "block billing." However, the Agreement allows for block billing.  Specifically, it provides:

>    5.    Fees and Billing.
>
>    . . .
>
>    (c) Terms of Bills.

11

**EXHIBIT 6**        **Page 60 of 65**

. . .

> Our billing statements will provide a description of the tasks performed by each attorney working on your matter, billed in quarter-hour increments.  If an attorney performs multiple different tasks on your matter in one day, our billing statements will indicate only the total amount of time spent by the attorney for all tasks performed on that date and do not break out the time spent on each individual task.

Respondents freely entered into this contract for legal services with Glaser Weil.  Again, Respondents are highly sophisticated parties who are familiar with attorneys' work, fee agreements and billing.  They presented absolutely no support for their allegation that "block billing" is illegal or otherwise prohibited.

With respect to the costs, Respondents contend that Glaser Weil charged excessive costs.  However, they did not substantiate this general – or any other – contention.  The Agreement provides:

> 6.    Costs.  In addition to our fees for legal services, we will bill you for costs incurred, including telephone and photocopy charges, postage, FAX costs, messenger and air freight charges, word processing charges, secretarial and word processing overtime necessitated by your matter, computer research, parking, meals for attorneys and staff when working overtime, and first class travel and accommodation expenses.  It has been our experience that it is inordinately expensive to document postage and telephone costs on a file-by-file basis.  Accordingly, we charge for such expenses based upon a percentage of the attorney and paralegal time logged on a particular matter for that month.  We reserve the right to adjust the amount we charge for the foregoing services, from time to time, as we deem appropriate, to reflect changes in our direct costs and our estimated overhead allocable to such services, as well as outside competitive rates charged for such services.

The costs incurred in the Underlying Action are consistent with the Agreement between the parties, and as such, are awarded to Glaser Weil.

12

**EXHIBIT 6**         **Page 61 of 65**

In sum, Respondents' asserted defenses were not substantiated at the Arbitration hearing. In their Post-Arbitration Brief, Respondents again attempt to raise frivolous arguments, but these arguments were not raised at the Arbitration, and in any event, are not supported by any evidence or testimony at the hearing. Throughout this Arbitration, Respondents have engaged in a pattern of delay and have attempted to raise irrelevant arguments and make improper assertions. But, these tactics are plainly insufficient. Thus, it remains that the testimony and evidence presented by Glaser Weil in support of its case are uncontroverted and establish its claims. The Arbitrator therefore determines that Glaser Weil is entitled to recover on the causes of action at issue in this Arbitration and are awarded the full amount of its fees and costs from the Underlying Action.

**D.    Interest is Awarded Pursuant to the Agreement**

Respondents argue that "virtually all of the 'interest' claimed by Glaser Weil must be disallowed." Specifically, they claim that Glaser Weil cannot recover interest during the MFAA proceeding. They rely on Business & Professions Code § 6203(a), which provides:

> The award shall be in writing and signed by the arbitrators concurring therein. It shall include a determination of all the questions submitted to the arbitrators, the decision of which is necessary in order to determine the controversy. The award shall not include any award to either party for costs or attorney's fees incurred in preparation for or in the course of the fee arbitration proceeding, notwithstanding any contract between the parties providing for such an award or costs or attorney's fees.

The above provision relied on by Respondents does not even discuss the recovery of interest. Rather, it states that an award under the MFAA cannot include an award of attorney's fees and costs incurred for the fee arbitration proceeding. It is clearly inapplicable. As such, Respondents' reliance on this provision is

13

EXHIBIT 6                    Page 62 of 65

misplaced.[2]

Under Code of Civil Procedure § 3287(a), in any civil action based on a contract, the prevailing party is generally entitled to recover interest from the date the underlying debt became due until either entry of judgment of the date paid. See also Code Civ. Proc. § 3302 ("[t]he detriment caused by the breach of an obligation to pay money only, is deemed to be the amount due by the terms of the obligation, with interest thereon"). Under this authority, Glaser Weil is entitled to an award of interest from the date of breach through the date of the award. See id. at § 3289.

Respondents contend that the 12% rate of interest set forth in the Agreement is usurious. However, Respondents ignore Civil Code § 3289(a) and (b) which states that the interest rate should be 10% unless there is a written agreement which provides otherwise. Specifically, "[a]ny legal rate of interest stipulated by a contract remains chargeable after a breach thereof . . . ." Civ. Code § 3289. Here, the rate of interest specified in the Agreement is 12%, and the Arbitrator finds that interest shall be applied on the outstanding balance as of July 26, 2016 at the rate of 12% as specified in the Agreement.

### IV.   Conclusion

The Arbitrator determines that Claimant Glaser Weil is the prevailing party and awards Glaser Weil (1) the full amount of its fees and costs from the Underlying Action in the total amount of $318,184.45 ($293,615.95 in fees and $24,568.50 in costs); and (2) interest on the outstanding balance which totals $236,401.39 as of July 26, 2016.

As a result of the findings set forth above Glaser Weil is entitled to the recovery of attorney's fees and costs after having been found to be the prevailing

---

[2] Similarly, Respondents' cite to 11 U.S. Code § 502(b)(2) is misplaced. This code section discusses the allowance of claims in a bankruptcy proceeding.

**EXHIBIT 6**           **Page 63 of 65**

party. Accordingly, Glaser Weil is directed to file and serve a detailed declaration or declarations on the subject of attorneys' fees and costs within 20 days of the date of service this Interim Award. Respondents have 15 days thereafter to file and serve objections to the fees and costs claimed. The Arbitrator will then set a further hearing to resolve any conflicts on the subjects of those declarations should it be deemed necessary.

The Arbitrator retains jurisdiction for the purpose settling and awarding attorneys' fees, costs and any other matters relevant to the arbitration.

The further determinations, if any, to be made will be based on written submissions and shall be embodied in a Final Award, which shall also incorporate the contents of the Interim Award. It is not intended that this Interim Award be subject to review either pursuant to 9 U.S.C. sections 9, 10 or Cal. Code Civ. Proc. Sections 1284 and 1285.

DATED:  August 10, 2016

_____
Hon. Peter D. Lichtman (Ret.)
Arbitrator

15

**EXHIBIT 6**        **Page 64 of 65**

## PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: Glaser Weil Fink Howard Avchen & Shapiro, LLP vs. Whitney, Kristen B., et al.
Reference No. 1220049793

I, Gregory Shackelford, not a party to the within action, hereby declare that on  August 10, 2016, I served the attached INTERIM AWARD on the parties in the within action by Email and by depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, at Los Angeles, CALIFORNIA, addressed as follows:

David A. Myers Esq.
Jonathan B. Cole Esq.
Nemecek & Cole
15260 Ventura Blvd.
Suite 920
Sherman Oaks, CA   91403-5399
Phone: 818-788-9500
dmyers@nemecek-cole.com
jcole@nemecek-cole.com
    Parties Represented:
    Glaser Weil Fink, et al.

Andre E. Jardini Esq.
Knapp Petersen & Clarke
550 N. Brand Blvd.
Suite 1500
Glendale, CA   91203-1904
Phone: 818-547-5000
aej@kpclegal.com
    Parties Represented:
    F. Matthew Adelman, Trustee
    Kristen B. Whitney, Trustee
    Watermill Flying Point Trust

Blaine J. Wanke Esq.
Fred M. Adelman Esq.
Milstein Adelman Jackson Fairchild & Wade, LLP
10250 Constellation Blvd.
14th Floor
Los Angeles, CA   90067
Phone: 310-396-9600
bwanke@milsteinadelman.com
fadelman@majfw.com
    Parties Represented:
    F. Matthew Adelman, Trustee
    Kristen B. Whitney, Trustee
    Watermill Flying Point Trust

I declare under penalty of perjury the foregoing to be true and correct. Executed at Los Angeles, CALIFORNIA on  August 10, 2016.

Gregory Shackelford
gshackelford@jamsadr.com

EXHIBIT 6                    Page 65 of 65

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
16030 Ventura Blvd., Suite 470, Encino, CA 91436

A true and correct copy of the foregoing document entitled **NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST DEBTOR FRED MATTHEW ADELMAN AND HIS COUNSEL, CREIM MACIAS KOENIG & FREY LLP, PURSUANT TO FED. R. BANKR. P. 9011 AND/OR 11 U.S.C. § 105(a); DECLARATION IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>August 31, 2016</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. <u>SERVED BY UNITED STATES MAIL OR CERTIFIED MAIL</u>** (state method for each person or entity served):
On <u>August 31, 2016</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Judge: Honorable Deborah J. Saltzman, U.S. Bankruptcy Court, 255 E. Temple St., Ste. 1334, Los Angeles, CA 90012
Debtor: Fred M. Adelman, 149 S. Barrington Ave, #775, Los Angeles, CA 90049

☐ Service information continued on attached page

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 31, 2016 | Brian D. Reed | /s/ Brian D. Reed |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**

# ADDITIONAL SERVICE INFORMATION (if needed)

1.    **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:


**Raymond H. Aver** ray@averlaw.com
**Aaron B Booth** abooth@aaronbooth.com, cflores@aaronbooth.com
**Reagan E Boyce** rboyce@brutzkusgubner.com, ecf@brutzkusgubner.com
**Candace Carlyon** ccarlyon@mpplaw.com, docket@ccarlyon.com,ccarlyon@ccarlyon.com
**Leslie A Cohen** leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;Brian@lesliecohenlaw.com
**Gary E Devlin** gdevlin@hinshawlaw.com, rmojica@hinshawlaw.com
**Sandford Frey** Sfrey@cmkllp.com, knielsen@cmkllp.com
**Jerome Bennett Friedman** jfriedman@flg-law.com, msobkowiak@flg-law.com;jmartinez@flglaw.
com;sbiegenzahn@flg-law.com
**Todd S Garan** ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com
**Marian Garza** ecfnotices@ascensioncapitalgroup.com
**Gerald A Klein** andrea@kleinandwilson.com, linda@kleinandwilson.com;klein@kleinandwilson.com
**Stuart I Koenig** Skoenig@cmkllp.com, knielsen@cmkllp.com
**Kenneth G Lau** kenneth.g.lau@usdoj.gov
**Nancy L Lee** bknotice@rcolegal.com
**Noreen A Madoyan** Noreen@MarguliesFaithLaw.com,
Helen@MarguliesFaithlaw.com;Victoria@MarguliesFaithlaw.com;Brian@MarguliesFaithlaw.com
**Craig G Margulies** Craig@MarguliesFaithlaw.com,
Victoria@MarguliesFaithlaw.com;Brian@MarguliesFaithlaw.com
**Daniel J McCarthy** dmccarthy@hillfarrer.com, spadilla@hillfarrer.com;docket@hillfarrer.com
**Joshua B Norton** joshua.norton@kyl.com, tammy.wade@kyl.com;pat.garnica@kyl.com
**Brett P Ryan** bknotice@rcolegal.com
**Charles Shamash** cs@locs.com, generalbox@locs.com
**Ramesh Singh** claims@recoverycorp.com
**United States Trustee (LA)** ustpregion16.la.ecf@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                              **F 9013-3.1.PROOF.SERVICE**